[Crim. No. 18807. First Dist., Div. Three. June 4, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROCKY LEE BUNDESEN, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Harriet Wiss Hirsch and Alice V. Collins, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WHITE, P. J.**—This appeal, pursuant to Penal Code section 1538.5, subdivision (m), is from a judgment entered after defendant and appellant Rocky Bundesen's motion to suppress evidence was denied and he pled guilty to violations of Health and Safety Code section 11350 (possession of heroin) and Business and Professions Code section 4143 (possession of a hypodermic needle or syringe).

During the early evening hours of May 26, 1978, San Jose Police Officers Giillim and Hafley were watching a house where they believed heroin sales were taking place. The officers were members of a special

detail called M.E.R.G.E. which focuses on felony offenses; they were in uniform but in an unmarked police car.

About 7:45 p.m. the officers saw two men leave the house they were watching, get into a 1965 Ford station wagon and drive off. The officers followed the station wagon in the hope they could legally stop it. The station wagon observed a stop sign at which time the officers observed that the vehicle's brake lights were inoperative.

The officers activated their red light. The car traveled about 100 yards before finally stopping and, during this period, Officer Giillim saw the passenger first dip down toward the floor with his left shoulder and then dip down again with his right shoulder.

When the station wagon stopped, the driver exited the car, walked back and met Officer Giillim. Officer Hafley left the police car and walked to the passenger side of the station wagon. Thomas Bundesen was the driver and appellant was the sole passenger. Officer Giillim advised Thomas that he had been stopped because his brake lights were defective and requested Thomas' driver's license. Thomas produced a temporary license. Appellant had exited the vehicle at the request of Officer Hafley.

While observing and conversing with Thomas, Officer Giillim determined that Thomas was under the influence of heroin. He noted that Thomas had constricted pupils, droopy eyelids, running nose, a dry mouth, slow low speech, raspy voice and no odor of alcohol. Officer Giillim examined Thomas' arm and found three fresh puncture wounds. Officer Giillim estimated that the puncture wounds were no more than four hours and not less than two hours old. Thomas was placed under arrest, handcuffed and put in the patrol car about 7:55 to 8 p.m.

Meanwhile appellant told Officer Hafley that he was on parole from California Rehabilitation Center, gave the name of his parole agent and stated he was subject to a search and seizure condition. Appellant told Officer Hafley that the station wagon belonged to him. Officer Hafley requested permission to search the vehicle, but appellant refused to consent to a search. However, after Officer Hafley was informed that Thomas was being arrested and appellant was subject to a search condition, he conducted a cursory search of the vehicle. Officer Hafley found a wallet underneath the passenger seat where appellant had been seat-

ed. Officer Hafley looked inside the wallet for identification, found papers bearing appellant's name and handed appellant the wallet.

The officers then discussed with appellant the possibility of his driving the station wagon home so he could arrange for bail for his brother. However, since Officer Hafley had not done a thorough search of the car, and appellant had made furtive movements, Officer Giillim decided to search it himself. Officer Giillim found a folded yellow piece of paper. The paper was visible from outside of the car but Officer Giillim could not tell what it was until he handled it.[1] Inside the yellow paper was a paper bindle folded in the usual manner for carrying narcotics. Inside the paper bindle was a white powdery substance. Appellant was arrested for possession of heroin.

Appellant was transported to the police department and in preparing for booking, Officer Giillim searched appellant's wallet and found another paper bindle of heroin in the money compartment of the wallet. The heroin was found while the contents of the wallet were being inventoried.

Officer Giillim telephoned Parole Agent Paul Feinstein and Feinstein returned the call about 11 p.m. Officer Giillim explained the circumstances of appellant's arrest for possession of heroin. The purpose of the call was to ascertain if Feinstein desired a parole hold placed on appellant. Feinstein told the officer he could not make a parole search of appellant's residence that night but asked if the officer could do so. The officers had not requested permission to make the residence search. Feinstein authorized the parole search and requested the officers to look for weapons and narcotics.

The officers proceeded to appellant's home, knocked on the door, were greeted by appellant's wife and permitted to enter. The officers explained they were police officers there to make a parole search of the residence. A needle, syringe and burned spoons were found in a kitchen cabinet.

The paper bindles found in the car and appellant's wallet were stipulated to contain heroin.

---

[1] The yellow paper was not folded in the usual manner for carrying narcotics. (See *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 898-899 [150 Cal.Rptr. 910, 587 P.2d 706].)

## Search of the Wallet

█ Appellant does not contest the validity of the search of the station wagon but argues the search of the wallet was invalid under *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]; *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467]; *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514]; and *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]. Appellant asserts the search of his wallet cannot be justified as a parole search because the stated purpose of the search was booking. Appellant urges that the reasoning of *Chadwick, Dalton, Minjares*, and *Pace* be applied to booking searches.

In *Chadwick*, Amtrak officials in San Diego observed a trunk or footlocker, unusually heavy for its size and leaking talcum powder, being loaded onto a train bound for Boston. Since the persons loading the footlocker matched a profile used to spot drug traffickers, the railroad officials gave the information, together with detailed descriptions of the suspects, to San Diego federal agents who in turn relayed the information to their counterparts in Boston. (*United States* v. *Chadwick, supra*, 433 U.S. 1, 3 [53 L.Ed. 2d 538, 543].)

Federal narcotics agents met the train when it arrived two days later in Boston. The agents watched the suspects as they claimed the footlocker and a suitcase. Two of the suspects, Machado and Leary, lifted the footlocker from a baggage cart and sat down on it. The federal agents released a dog near the footlocker and, without alerting the suspects, the dog signaled the presence of drugs within the footlocker. (*United States* v. *Chadwick, supra*, 433 U.S. 1, 3-4 [53 L.Ed.2d 538, 543-544].)

A third suspect, Chadwick, joined the others and they hired an attendant to move the footlocker to Chadwick's waiting car. Machado, Leary and the attendant placed the 200-pound footlocker into the trunk of the car. While the trunk was still open, the federal narcotics agents arrested the three suspects. The suspects and car containing the footlocker were taken to the federal building in Boston and about an hour and a half later, the footlocker and luggage were searched without a warrant. The footlocker had been locked with a padlock and its regular lock. (*United States* v. *Chadwick, supra*, 433 U.S. 1, 4-5 [53 L.Ed.2d 538, 543-544].)

The government had argued that the rationale underlying the automobile exception to warrantless searches should apply to warrantless searches of luggage and other similar closed containers. The Supreme Court rejected the argument that luggage and automobiles were analogous for Fourth Amendment purposes. The court observed that warrantless searches of automobiles were often justified because of their inherent mobility which often makes obtaining a warrant impractical. Aside from its inherent mobility, the court has recognized that a diminished expectation of privacy surrounds the automobile. For example, it is primarily used for transportation and not a residence or repository of personal effects, and often when on the public thoroughfares, its occupants and contents are open to view. Also, vehicles must be registered and operators licensed. Vehicles are subject to official safety inspections and are regulated as to how they may be operated on public streets and highways. (*United States* v. *Chadwick, supra*, 433 U.S. 1, 11-13 [53 L.Ed.2d 538, 548-549].)

The high court emphasized that the same factors that diminish the privacy aspects of the automobile do not apply to luggage. Luggage is not generally open to public view, nor is it subject to regular inspections and official scrutiny on a regular basis. Most importantly, the court stressed that, unlike the automobile, the primary function of which is transportation, "luggage is intended as a repository of personal effects," so that, "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." (*United States* v. *Chadwick, supra*, 433 U.S. 1, 13 [53 L.Ed.2d 538, 549].) Although at the time the footlocker was seized it was mobile, the footlocker had been immobilized and was under the exclusive control of the federal agents without "the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained." Once the footlocker had been safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant. (*Id.*, at p. 13 [53 L.Ed.2d at pp. 549-550].)

The Supreme Court in *Chadwick* noted the distinctions between the permissible scope of a search under *Chimel* v. *California* (1968) 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034], and the scope of the search in question as follows: "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place

from the arrest,' [citation], or no exigency exists. *Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.*" (*Id.*, at p. 15 [53 L.Ed.2d at pp. 550-551], italics added.)

The protection accorded the footlocker in *Chadwick* was accorded to a tote bag found in the trunk of a car after the police had towed the car to the city corporations yard in *People v. Minjares, supra*, 24 Cal.3d 410; to closed containers found in a car trunk in *People v. Dalton, supra*, 24 Cal.3d 850; and to a lunch box which had been secured by the police at the time of the arrest in *People v. Pace, supra*, 92 Cal.App.3d 199.[2]

Appellant contends under the authority of *Chadwick, Minjares, Dalton* and *Pace* that since the wallet had been removed from appellant's person and taken into another room to be inventoried, the wallet was in the exclusive control of the police and a warrant should have been obtained since the record is devoid of any evidence pointing to the existence of exigent circumstances. Appellant apparently recognizes that the reasoning of *Chadwick, Minjares* and *Dalton* has not been as yet applied to booking searches, but argues that the reasoning should be so applied because "the purposes of a booking search may be achieved when closed personal effects are reduced to the exclusive control of the police . . . ."

---

[2]In *People v. Flores* (1979) 100 Cal.App.3d 221 [160 Cal.Rptr. 839], Division One of this court refused to apply *Chadwick, Minjares* and *Dalton* to a shoulder canvas bag, stating "none of those searches involved the arrestee's person, or extension thereof, contemporaneous with the arrest. Here the personal shoulder bag, designed to perform essentially the same function as a purse, was 'immediately associated' with the defendant at all relevant times, including the ensuing struggle, and its search was remote neither in time nor place." (*Id.*, at p. 232.) The court found *Pace* to be unpersuasive authority because it did not agree with the reasoning in *Pace* that *Chadwick* impliedly repudiates the validity of a warrantless search otherwise incidental to and contemporaneous with a valid custodial arrest simply because the item has been physically removed from the arrestee's immediate control. The court in *Flores* further stated: "Moreover, although the *Pace* court recognizes the continuing viability of the *Chimel* rule governing searches incident to arrest (*id.*, at p. 207), it nevertheless fails to consider or discuss the permissible scope of searches of property *associated with the person* of the arrestee (or normal extensions) as distinguished from the 'area "within his immediate control"' [citations] and would—without more—routinely condemn otherwise valid accelerated and authorized booking searches." (*Id.*, at p. 232, fn. 5.)

The so-called booking search has been repeatedly upheld.[3] (*United States* v. *Edwards* (1974) 415 U.S. 800 [39 L.Ed.2d 771, 94 S.Ct. 1234]; *People* v. *Maher* (1976) 17 Cal.3d 196, 200-201 [130 Cal.Rptr. 508, 550 P.2d 1044]; *People* v. *Longwill, supra,* 14 Cal.3d 943; *People* v. *Ross* (1967) 67 Cal.2d 64, 70-71 [60 Cal.Rptr. 254, 429 P.2d 606], rev. on other grounds *sub nom. Ross* v. *California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]; *People* v. *Brown* (1979) 88 Cal.App. 3d 283, 293 [151 Cal.Rptr. 749]; *In re John C.* (1978) 80 Cal.App.3d 814, 820 [145 Cal.Rptr. 228]; *People* v. *Gilliam* (1974) 41 Cal.App.3d 181, 189 [116 Cal.Rptr. 317]; *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 622-623 [106 Cal.Rptr. 461]; *People* v. *Tennessee* (1970) 4 Cal. App.3d 788 [84 Cal.Rptr. 697]. The purpose of the booking search has been explained as follows: "to maintain jail security, to discover evidence pertaining to the crime charged, and to safeguard the prisoner's personal belongings." (*People* v. *Maher, supra,* 17 Cal.3d 196, 200.)

Penal Code section 1412 which requires law enforcement officers to inventory money and other property taken from arrestees provides: "When money or other property is taken from a defendant, arrested upon a charge of a public offense, the officer taking it must at the time give duplicate receipts therefor, specifying particularly the amount of money or the kind of property taken; one of which receipts he must deliver to the defendant and the other of which he must forthwith file with the clerk of the court to which the depositions and statement are to be sent. When such property is taken by a police officer of any incorporated city or town, he must deliver one of the receipts to the defendant, and one, with the property, at once to the clerk or other person in charge of police-office in such city or town." Similarly Government Code section 26640 provides: "The sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail. Except when otherwise ordered by a court of competent jurisdiction, the sheriff shall pay such money or sums therefrom and deliver such valuables or portions thereof as the prisoner directs and shall pay and deliver all the remainder of his money and valuables to the prisoner or to his order upon the release from the jail or to his legal representative in case of his death or insanity." In *People* v. *Balassy, supra,* 30 Cal.App.3d 614, 622-623,

---

[3]Where the arrestee is validly subject to a search during a jailhouse booking process, he may also be subject to a field or accelerated booking search. (*People* v. *Longwill* (1975) 14 Cal.3d 943, 948 [123 Cal.Rptr. 297, 538 P.2d 753]; *People* v. *Barajas* (1978) 81 Cal.App.3d 999, 1008-1009 [147 Cal.Rptr. 195].)

defendant's wallet was taken from him and searched during the booking process. The court held that not only may a defendant be searched during a booking process, but the jailer has a statutory duty to do so under Penal Code section 1412 and Government Code section 26640.

In order to sustain appellant's contention on appeal this court must hold that *Chadwick* and the California cases which have relied upon *Chadwick* impliedly invalidate booking searches of all closed containers.[4] *Chadwick* requires law enforcement officers to obtain a warrant only if the officers "have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, ..." (*United States* v. *Chadwick, supra,* 433 U.S. 1, 15 [53 L.Ed.2d 538, 551], italics added.) It can hardly be argued that a wallet is not closely associated with the person of the arrestee. It therefore appears that *Chadwick* and the California Supreme Court cases which relied upon *Chadwick* (*Dalton* and *Minjares*) have not impliedly overruled booking searches at least to the extent the booking search is of personal property "immediately associated with the person of the arrestee...." (*Chadwick, supra,* at p. 15 [53 L.Ed.2d at p. 551].)

The judgment is affirmed.

Scott, J., and Feinberg, J., concurred.

A petition for a rehearing was denied July 3, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 30, 1980.

---

[4]Unless *Chadwick* and the California Supreme Court cases following *Chadwick* have invalidated booking searches of closed containers, this court must follow the California Supreme Court cases upholding booking searches. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)