(No. 58912.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DONALD DILLON, JR., Appellee.

*Opinion filed June 29, 1984.—Rehearing denied September 28, 1984.*

CLARK, SIMON, and GOLDENHERSH, JJ., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert and Michael B. Weinstein, Assistant Attorneys General, of Chicago, and Michael E. Shabat and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

John W. Brady, of Bridgeview, and Suzanne Philbrick, of Oak Lawn, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Donald Dillon, Jr., was charged with the unlawful possession of less than 30 grams of a controlled substance containing cocaine (Ill. Rev. Stat. 1981, ch. 56½, par. 1402(b)). The circuit court of Cook County granted his motion to suppress the cocaine evidence, and the State appealed the suppression order pursuant to our Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)). The appellate court affirmed (116 Ill. App. 3d 1171) in a Rule 23 order (87 Ill. 2d R. 23), and we allowed the State's petition for leave to appeal (87 Ill. 2d R. 315).

On the evening of November 7, 1981, two patrolling Palos Hills police officers stopped the automobile being driven by defendant when they noticed that his rear license plate light was out. Officer James Murphy approached defendant, explained the reason for the stop, and asked to see defendant's driver's license. Officer

Murphy's partner then ran a routine radio check of the license and was informed that a warrant for defendant's arrest for a bond forfeiture was outstanding. Although defendant claimed that his lawyer had "taken care of" the warrant, he was placed under arrest and taken to the Palos Hills police station, where he was handcuffed to a chair in a detention room. Officer Murphy was given a police computer slip verifying the information previously received over the radio and commenced "processing" defendant. The officer apparently unhandcuffed defendant and instructed him to place his personal belongings on a table while the officer listed them on the inventory sheet. After defendant placed several items, including his wallet, on the table, Officer Murphy examined the wallet and discovered a folded-up piece of opaque paper containing cocaine. During this period of 30 to 45 minutes, Officer Murphy testified defendant used the telephone to make "approximately" 10 calls.

The State urges that the discovery and removal of the cocaine were justified either as incidental to defendant's lawful arrest or as a standard police inventory undertaken at the police station. The trial judge, stating that he assumed, in the absence of any evidence to the contrary, that a valid warrant was outstanding, agreed that Officer Murphy properly seized defendant's wallet, but considered the further examination of the wallet's contents to be an "unconstitutional intrusion," apparently because a less intrusive inventory could have been accomplished by sealing the wallet and its contents in an envelope. The appellate court affirmed, holding that the officer had no authority to conduct an inventory search since it was not established at the suppression hearing that defendant was going to be incarcerated. We reverse.

Our statute provides:

"When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:

\* \* \*

(d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense." (Ill. Rev. Stat. 1981, ch. 38, par. 108—1.)

When that statute is considered in light of *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234, *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, and *People v. Hoskins* (1984), 101 Ill. 2d 209, it may well be that the seizure of the cocaine in defendant's wallet could be sustained as a search incidental to defendant's arrest. Because the examination of the wallet actually occurred at the station house during an inventory of defendant's possessions, however, we prefer to consider it in the category of an inventory search.

In our judgment, the search and seizure rules enunciated in the recent opinions of the Supreme Court in *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605, *Robinson* and our own opinion in *Hoskins* are clearly dispositive of the issues before us. As we said in *Hoskins*:

"The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of the facts and circumstances before him at the time without regard to his underlying intent or motivation. [Citation.]" (*People v. Hoskins* (1984), 101 Ill. 2d 209, 213-14.)

The trial judge found, and we agree, that there is nothing in this record indicating any reason for Officer Murphy to doubt that a valid warrant was outstanding for defendant's arrest. He had been so informed at the scene of the arrest as a result of the radio check of

defendant's driver's license, and that information had been verified from the computer upon his arrival at the station. Despite defendant's assertion that he told Officer Murphy the warrant had been "taken care of" and that defendant could "bond out," the officer was not obliged to accept defendant's statements, particularly in view of the contrary information from the earlier inquiries. (*People v. Gwin* (1971), 49 Ill. 2d 255.) Indisputably, probable cause for defendant's arrest and detention existed. Ill. Rev. Stat. 1981, ch. 38, par. 107—2(1)(b); *People v. Creach* (1980), 79 Ill. 2d 96, 101-02.

The defendant who moves to suppress evidence has the burden of establishing the unlawfulness of the search and seizure. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 212, and authorities there cited.) Other than the fact that the warrant was for a "bond forfeiture," there is no proof of the precise charge upon which it was issued. If the offense was in fact bail jumping, any bond in connection with that charge would presumably be substantial. Again there is no proof of defendant's ability to meet the requirements of a substantial bond. In short, nothing before us indicates a result other than that it would be necessary to continue to hold defendant in custody. There appears to us nothing unreasonable or offensive to the fourth amendment in the conduct of an officer who, believing the prisoner in custody must be held for further proceedings in connection with the warrant, proceeds to inventory his belongings as a preliminary step in the incarceration process. (*Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605.) As the court there stated:

> "The question here is whether, consistent with the Fourth Amendment, it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police stationhouse incident to booking and jailing the suspect.

\*\*\* A so-called inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration." (*Illinois v. Lafayette* (1983), 462 U.S. 640, 644, 77 L. Ed. 2d 65, 69-70, 103 S. Ct. 2605, 2608.)

The court also made clear the reasons supporting the inventory:

"At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. A range of governmental interests supports an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the station house. A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house, not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. \*\*\* The bare recital of these mundane realities justifies reasonable measures by police to limit these risks—either while the items are in police possession or at the time they are returned to the arrestee upon his release. Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure. It is immaterial whether the police actually fear any particular package or container; the need to protect against such risks arises independent of a particular officer's subjective concerns. See *United States v. Robinson* [(1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440, 94 S. Ct. 467, 476-77.] Finally, inspection of an arrestee's personal property may assist the police in ascertaining or verifying his identity. See 2 W. LaFave, Search and Seizure sec. 5.3, at 306-307 (1978)." 462 U.S. 640, 646, 77 L. Ed. 2d 65, 71, 103 S. Ct. 2605, 2609-10.

And, as to the relevance of less intrusive means of inventorying or searching, the court was emphatic:

"We are hardly in a position to second-guess police de-

partments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house. It is evident that a station house search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved.

Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit. Only recently in *New York v. Belton* [(1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860], we stated that ' "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." ' [453 U.S. 454, 458, 69 L. Ed. 2d 768, 774, 101 S. Ct. 2860, 2863], quoting *Dunaway v. New York* [(1979), 442 U.S. 200, 213-14, 60 L. Ed. 2d 824, 836, 99 S. Ct. 2248, 2257.] See also *United States v. Ross* [(1982), 456 U.S. 798, 821-22, 72 L. Ed. 2d 572, 591, 102 S. Ct. 2157, 2170-71.]" (462 U.S. 640, 648, 77 L. Ed. 2d 65, 72-73, 103 S. Ct. 2605, 2610-11.)

Clearly defendant's claim that the seizure here was invalid because a less intrusive inventory would have been possible is without substance.

Defendant also argues that the officer had no authority to search the contents of the wallet once he had reduced it to his exclusive control. Defendant relies on *United States v. Chadwick* (1977), 433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485, where the Supreme Court held that "[o]nce law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control *** a search of that property is no longer an incident of the arrest." (Emphasis added.)

*Chadwick*, of course, did not involve an inventory search, but would not be persuasive even were we considering this case in the context of a search incident to an arrest. We held in *Hoskins* that the police could search the contents of a purse incident to a lawful arrest even though they had reduced the purse to their exclusive control since the purse, unlike the 200-pound footlocker in *Chadwick*, was considered "immediately associated with the person of the arrestee." There is obviously no reason to characterize this wallet differently, and other jurisdictions have uniformly recognized that a wallet and its contents are proper subjects of a search incident to a lawful arrest. See *Chambers v. State* (Ind. 1981), 422 N.E.2d 1198; *Middleton v. State* (Alaska 1978), 577 P.2d 1050; *United States v. McEachern* (4th Cir. 1982), 675 F.2d 618; *United States v. Passaro* (9th Cir. 1980), 624 F.2d 938; *United States v. Castro* (5th Cir. 1979), 596 F.2d 674, *cert. denied* (1979), 444 U.S. 963, 62 L. Ed. 2d 375, 100 S. Ct. 448; *People v. Bundesen* (1980), 106 Cal. App. 3d 508, 165 Cal. Rptr. 174.

Because we view the evidence in this record as amply supporting a belief by the inventorying officer that it was necessary to incarcerate defendant for some indefinite period of time pending further proceedings, we hold the cocaine was discovered and seized during a constitutionally permissible inventory search. The judgments of the appellate and circuit courts are accordingly reversed and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE CLARK, dissenting:
I disagree with the majority in this case for the same reason I dissented in *People v. Hoskins* (1984), 101 Ill.

2d 209. The majority, after concluding that the warrantless search in the instant case was justified as an inventory search, also states that the search was justified as a search incident to an arrest. While I do not agree that the warrantless search of the contents of the defendant's wallet can be justified as an inventory search, I certainly do not agree that the search can be justified as a search incident to an arrest.

The majority quotes from *Illinois v. Lafayette* (1983), 462 U.S. 640, 646, 77 L. Ed. 2d 65, 71, 103 S. Ct. 2605, 2609, where the United States Supreme Court stated:

> "At the station house, it is entirely proper for police to *remove and list* or inventory property found on the person or in the possession of an arrested person *who is to be jailed*." (Emphasis added.)

Besides the fact that in the instant case it had not been established that the defendant was going to be jailed and that his possessions should be inventoried, taking the wallet and listing its existence is different than searching the contents of the wallet and a packet within it.

Section 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108—1) delineates the instances when a police officer may lawfully search a person incident to a lawful arrest. Section 108—1 provides:

> "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:
>
> (a) Protecting the officer from attack; or
> (b) Preventing the person from escaping; or
> (c) Discovering the fruits of the crime; or
> (d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense."
> Ill. Rev. Stat. 1981, ch. 38, par. 108—1.

In this case, the defendant's wallet was not searched to protect the officers from attack. The defendant's wallet was on a table in the police station, and it could not be used to attack the officer.

The wallet was also not searched to prevent the defendant from escaping. Clearly, the wallet could not have been utilized in any fashion to effectuate an escape.

The wallet was not searched to discover the fruits of the crime for which the defendant was arrested because the defendant had been stopped because "his rear license plate light was out," and bond forfeiture is not an offense for which there are discoverable fruits.

Finally, there was no justification for the search of the wallet for the purpose of discovering any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, an offense, because there was no probable cause for the police officer to believe that a person stopped for a burned-out light, or a person who forfeited bond for an unknown offense, would have any illegal substances in his wallet.

I do not believe there is any justification for the warrantless search of the contents of the defendant's wallet as an inventory search or under section 108—1 and therefore I respectfully dissent.

GOLDENHERSH and SIMON, JJ., join in this dissent.

JUSTICE SIMON, also dissenting:

I concur in Justice Clark's dissent, and I write separately to explain why I believe that this search cannot be upheld as an inventory search under *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605. The principal governmental interests supporting such searches are to prevent weapons, drugs or other contra-

band from entering the general prison population and to catalogue the property lawfully seized from the defendant for this purpose prior to his incarceration. Thus, "[a]t the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person *who is to be jailed.*" (Emphasis added.) 462 U.S. 640, 646, 77 L. Ed. 2d 65, 71, 103 S. Ct. 2605, 2609.

In this case the trial court found that "[t]here is no evidence in the record from either side that this defendant was going to be detained in custody. There is no evidence in the record *** that the defendant was going to be placed in a holding cell." In fact, the evidence shows that the defendant was initially stopped for a routine vehicle-equipment violation and that, while he was briefly taken into custody on an allegedly outstanding warrant in a bond-forfeiture proceeding, there was no suggestion by anyone that he would be incarcerated or would not be allowed to make bond promptly. Under these circumstances, there was no basis for an inventory search, for the police had not determined that the defendant would be placed with the general jail population. The circuit court's factual determinations on this issue should be upheld and the search of the defendant's wallet should be regarded as an unreasonable and unnecessary inventory search.