THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
STEVEN NOGEL, Defendant-Appellee.

Fourth District   No. 4—85—0105

Opinion filed October 10, 1985.

393

McCULLOUGH, J., dissenting.

393

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Gwendolyn Klingler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Blake Weaver, of Urbana, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:
Defendant was charged with unlawful use of weapons and possession of a firearm without a firearm owner's identification card in violation of section 24—1(a)(4) of the Criminal Code of 1961 and section 2(a) of "An Act relating to the acquisition, possession and transfer of firearms ***" (Ill. Rev. Stat. 1983, ch. 38, pars. 24—1(a)(4), 83—2(a)). Following a hearing on defendant's motion to suppress a revolver and cartridges discovered as the result of an inventory search, the trial court granted the motion and suppressed the evidence. The State filed an appropriate certificate of impairment and a timely notice of appeal.

At issue is whether the police were justified in conducting a station house inventory search of defendant's locked briefcase following his admittedly lawful arrest on a city ordinance violation.

The evidence presented at the hearing on the motion to suppress stood in irreconcilable conflict. Indeed, the trial court characterized the entire proceedings as "disingenuous." Nevertheless, the trial court, after very careful examination of the facts, resolved all signifi-

cant conflicts in the testimony in favor of the arresting officer. On appeal, defendant has not made any significant challenge to any of the findings of the trial court in that regard and we will not question them for purposes of this appeal.

Although we are mindful of the observation of the supreme court that apparently small differences in factual situations frequently are viewed as controlling differences in determining fourth amendment rights (*Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586), we believe that the facts can be stated succinctly.

Defendant and his girlfriend, Sherry Lynn Riser, were departing from Champaign heading for Indiana on the evening of October 2, 1984. Each was driving an automobile both of which were owned by the defendant. Defendant, in the lead car, developed engine trouble and was forced to abandon the vehicle in an Eagle Supermarket parking lot at Pioneer Plaza in Champaign. Riser, in the trailing car, followed the defendant into the parking lot and stopped some distance from the defendant's vehicle. The defendant, unable to restart his automobile after several attempts left his car after first retrieving a briefcase from the trunk. He subsequently entered the car in which Riser was located after first placing the briefcase inside the car.

All these events were witnessed by arresting Officer James Brewer who was parked in his squad car on stationary traffic patrol some short distance away. At this point, the stories diverge.

Brewer testified that defendant had words with Riser and that after entering the car Brewer witnessed a physical altercation between the two. Blows were struck by each and specifically Brewer noted defendant striking Riser in the area of the mouth, a blow which caused her head to recoil. A backup officer was summoned by Brewer and together they dislodged the two from the car. Brewer noted an injury to Riser's lip and mouth which appeared "very fresh."

Defendant's version and Riser's were that there was no argument. Riser had simply fallen asleep before defendant entered the car. Upon awakening she was disoriented and began flailing her arms. Defendant blocked her attempted blows and grabbed her wrists until she became fully awake. At that point the police flashed their lights into the car and ordered them out of the automobile. Riser denied any injury to herself.

Neither defendant nor Riser cooperated with the police and according to Brewer they were then arrested on what he termed a "city charge of fighting." The two, along with the briefcase located in the back seat of Riser's car, were taken to the Champaign city jail.

Upon arrival, both were subjected to standard booking procedures

and the items of property on their persons were inventoried. That search revealed that defendant had at least $110 in United States currency in his possession.

Brewer acknowledged that the customary practice on an ordinance violation arrest of this type was to book the defendant, take information for the arrest materials, fill out the city complaint, write a report and then "usually either bond out or give a notice to appear." Brewer further testified that the bond for such a violation was $50.

Nevertheless, defendant was not allowed to bond himself out. Instead, he was placed in a jail cell after he refused to turn over the combination to his locked briefcase. Brewer testified that it was standard procedure to inventory all items of personal property and objects containing personal property both for the protection of the property of the defendant and of the police officer against later claims that items were stolen.

Brewer stated that he questioned defendant several times requesting the combination to the briefcase. Alternatively, defendant either disclaimed knowledge of the briefcase and its contents or attempted to lead the officer to believe he did not understand the questions. Defendant on the other hand testified that he vehemently refused each and every request for the combination. Although the officer threatened to break into the briefcase, the combination was discovered "inadvertently" and the case was opened. Inside, police discovered in excess of $800 cash, a number of silver ingots, other personal papers and effects, and a loaded .38-caliber revolver. On this basis, defendant was charged with two Class A misdemeanor weapon offenses.

As further justification for the search, the officer testified that while still at the scene of the altercation, Riser told him that the briefcase contained money; a statement which Riser denied making. Based on that statement, Brewer retrieved the briefcase from the car because he claimed the car could not be secured and he did not want to leave valuable property unattended in a public place. Brewer admitted that he made no further search of the car's interior to determine if other valuable items were present. In addition, at some point in time well after defendant either refused to reveal the combination or feigned ignorance as to the briefcase and its contents, the officer contacted the Champaign County State's Attorney for a "legal opinion" as to the efficacy of inventorying the contents of the locked briefcase.

As we noted at the outset, the trial court resolved all conflicting evidentiary disputes in favor of the State based on the testimony of the police officer which he found much more reliable and credible.

Yet, the trial court ordered the weapon and cartridges suppressed because, in the words of the trial judge:

"[T]he resolution seems fairly obvious to me. I do not see how, when a Defendant is arrested for an ordinance violation that is bondable with less than half of the cash that he has on his person and held for apparently bond because he wasn't given a notice to appear, that that situation translates into some requirement that the police officers opened a locked container to inventory the contents. ***

*** It's plain that what is going on here is a search and they're looking for some way to justify it."

■ The standard for appellate review of a motion to suppress is whether the finding of the trial court was manifestly erroneous. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.

■ The State argues initially that the police officer had a legitimate right to secure the briefcase and transport it together with the defendant to the police station for booking. The defendant does not disagree. Clearly, when the police officer was informed that the briefcase contained money (and the trial court resolved the discrepancy in the testimony in the police officer's favor on this point), the officer had a legitimate right to take charge of the briefcase especially when he believed it could not be secured in the automobile from which it was taken. See *United States v. Chadwick* (1977), 433 U.S. 1, 18-19, 53 L. Ed. 2d 538, 553, 97 S. Ct. 2476, 2487 (Blackmum, J., dissenting).

From this premise, the State then argues that once the locked briefcase is in his lawful possession pursuant to any lawful arrest, the officer is entitled as part of a routine inventory procedure to search it as incident to the booking process which otherwise occurs. We do not agree.

■ In *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, the Supreme Court recognized as an exception to the warrant requirement the valid inventory search based on at least three different and distinct governmental objectives, *i.e.*, (1) protecting the owner's property while in police custody, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from potential dangers. In *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605, the United States Supreme Court reaffirmed the legitimacy of inventory searches and stated that "[t]he justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search. ***. A so-called inventory search is

not an independent legal concept but rather an incidental administrative step following arrest and *preceding incarceration.* To determine whether the search *** was unreasonable we must 'balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " (Emphasis added.) 462 U.S. 640, 643-44, 77 L. Ed. 2d 65, 69-70, 103 S. Ct. 2605, 2608.

In *Lafayette* the question was "whether, consistent with the Fourth Amendment, it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking *and jailing the suspect.*" (Emphasis added.) (462 U.S. 640, 643, 77 L. Ed. 2d 65, 69, 103 S. Ct. 2605, 2608.) The Supreme Court also stated "[a]t the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person *who is to be jailed.*" (Emphasis added.) (462 U.S. 640, 646, 77 L. Ed. 2d 65, 71, 103 S. Ct. 1605, 1609.) Finally, after applying the principles and governmental interests and weighing and balancing those against the individual's fourth amendment rights, the Supreme Court held:

> "[I]t is not 'unreasonable' for police, as part of the routine procedure *incident to incarcerating an arrested person,* to search any container or article in his possession, in accordance with established inventory procedures." (Emphasis added.) 462 U.S. 640, 648, 77 L. Ed. 2d 65, 73, 103 S. Ct. 2605, 2611.

Indeed, footnote 3 to the holding in *Lafayette* states:

> "The record is unclear as to whether respondent was to have been incarcerated after being booked for disturbing the peace. That is an appropriate inquiry on remand." 462 U.S. 640, 648, 77 L. Ed. 2d 65, 73, 103 S. Ct. 2605, 2611.

In the Illinois Supreme Court case of *People v. Dillon* (1984), 102 Ill. 2d 522, 468 N.E.2d 964, defendant was charged with unlawful possession of less than 30 grams of a controlled substance after his automobile was stopped because his rear license plate light was out. Upon a routine radio check of his driver's license, police were informed that a warrant for defendant's arrest for bond forfeiture was outstanding. Despite his protestations that his lawyer had "taken care of" the warrant he was arrested. At the station house, the personal items in his pockets, including his wallet, were searched and a folded up piece of paper containing cocaine located within his wallet was discovered. In ruling that a valid inventory search occurred, our supreme court stated:

> "There appears to us nothing unreasonable or offensive to the

fourth amendment in the conduct of an officer who, *believing the prisoner in custody must be held for further proceedings* in connection with the warrant, proceeds to inventory his belongings *as a preliminary step in the incarceration process.*" (Emphasis added.) 102 Ill. 2d 522, 526, 468 N.E.2d 964, 966.)

In doing so, the supreme court applies the United States Supreme Court's opinion in *Lafayette* and concluded:

"Because we view the *evidence* in this record as *amply supporting a belief* by the inventorying officer *that it was necessary to incarcerate defendant for some indefinite period of time pending further proceedings*, we hold the cocaine was discovered and seized during a constitutionally permissible inventory search." (Emphasis added.) 102 Ill. 2d 522, 529, 468 N.E.2d 964, 967.

Applying the law to the facts in this case, we begin by noting as did the Supreme Court that an inventory search is not an independent legal concept. (462 U.S. 640, 644, 77 L. Ed. 2d 65, 70, 103 S. Ct. 2605, 2608.) It does not exist in a vacuum. The legitimate governmental interests which permit the search only come into play if an antecedent factual context justifies their application. The facts of a particular situation may permit an inventory search to promote legitimate governmental interests. However, the mere existence of abstract governmental interests does not, of itself, justify any intrusion under the guise of an inventory search.

In the case at bar, the State sought to justify the search in order to protect the defendant's possessions and the police from false claims of theft. However, as the holdings in *Lafayette* and *Dillon* plainly instruct, a search of any container or article in the possession of an arrested person on these grounds is permissible only if it is incident to the further incarceration of that person. At the very least, the arresting officer must have a reasonable belief that the prisoner in custody must be held for further proceedings.

The facts of this case clearly fall outside these guidelines. Defendant was to be charged with an ordinance violation, a "quasi criminal" proceeding. Following arrest on such a charge, at worst, defendant would have had to post a $50 bond, a sum he was easily able to surrender given the amount of currency contained on his person at the time of arrest. Moreover, the arresting officer had run a routine license check on the defendant's automobiles and did not discover and was not aware of any other outstanding warrants which would have permitted him to hold the defendant beyond the amount of time necessary to book him on the ordinance violation.

■ The State argues that incarceration as used in *Lafayette* should be interpreted to mean any period of detention no matter how minimal including the booking process. The State reasons that since defendant and his property are subject to separation during the booking process an inventory search is justified to protect the police from later false claims of theft or tampering. We cannot agree. As the Supreme Court in *Lafayette* noted, an appropriate inquiry on remand would be whether the respondent in that case would have been incarcerated *after* being booked for disturbing the peace. Thus, incarceration must mean something more intrusive than simple detention for the purely administrative purpose of booking an individual who is otherwise subject to immediate release on a nonsubstantial quasi criminal charge.

Simply put, the significant inquiry is whether there is a reasonable belief that the defendant will be subject to further incarceration. If he is, then the inventory search is legitimate. Moreover, it does not matter in retrospect whether the defendant is actually incarcerated for any significant period of time after the booking process. The focus must necessarily begin and end with an examination of the reasonableness of the police officer's necessarily *ad hoc* determination based on the facts and information available to the officer at the station house following arrest.

■ As we have indicated, the evidence did not demonstrate any such reasonable belief in this case. Indeed, the clear import of Officer Brewer's testimony was that defendant was placed in a cell for the sole reason that he refused to turn over the combination to his briefcase. It is also unavailing that the officer was informed that the locked briefcase contained money, a neither startling nor unusual revelation. As the briefcase was already secured by virtue of it being locked, we find it difficult to see how the policy of protecting police from claims of stolen property would be furthered when it could reasonably be anticipated that the briefcase would be returned to the defendant in a relatively short period of time in precisely the same condition it was in when it was·seized.

Our holding today is necessarily limited to the facts of this case. We cannot say that under the circumstances the trial court's decision to suppress the contents of the briefcase was manifestly erroneous. An arrest without any reasonable expectation of further incarceration does not grant an unlimited license to search, under the guise of the inventory exception to the warrant requirement, all personal property or containers admittedly within the legal but nevertheless temporary custody of the police.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

GREEN, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:

The majority draws the conclusion that the defendant would have been released on bond for the ordinance violation and, hence, no need to inventory the contents of the briefcase. There is nothing in the record to indicate whether the defendant requested to be bonded out or whether there was any discussion. It is not clear that the police, in fact, have any obligation to inform the defendant that he has a right to make bond. Certainly an officer should answer a defendant's questions at the time of booking, but the record is silent as to any conversation between the defendant and the arresting officer as to bond. The record is devoid of any testimony concerning the defendant's desire to be released on bond until the next morning, when there was conversation and testimony concerning the defendant's telephone call to his sister.

The search was justified under *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605. The majority emphasizes that an essential element to justify the search was as a procedure prior to incarceration. The governmental objectives set forth in *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, and as set forth in the majority opinion, apply in the instant case. The trial court gave credence to the testimony of Officer Brewer. The officer testified that it was standard procedure to inventory all items and personal property of defendants for the protection of the officers and the defendants. Also, at the scene of arrest, Riser told the officer that the briefcase did contain money. I agree with the majority that when the police officer was informed that the briefcase contained money, the officer had a legitimate right to take charge of the briefcase.

The majority also stated that the briefcase was locked and hence no need for police concern. This overlooks the fact that the case opened without the officer knowing the combination. Arresting officers should not engage in skullduggery to accomplish their purposes, but Officer Brewer's testimony indicated his conduct was straightforward and evenhanded.

Article 103 of the Code of Criminal Procedure of 1963 (Code)

Rights of Accused (Ill. Rev. Stat. 1983, ch. 38, pars. 103—1 through 103—8), does not mandate or mention any requirement that an arresting officer inform a defendant of his right to make bond. Article 110 of the Code (Ill. Rev. Stat. 1983, ch. 38, pars. 110—1 through 110—17) does not require the officer to inform defendant of the bonding amounts; nor does article V of the Supreme Court Rules, Rules on Trial Court Proceedings in Traffic and Conservation Offenses, Ordinance Offenses, Petty Offenses, and Certain Misdemeanors—Bail Schedules (87 Ill. 2d Rules 501 through 556). Neither the Illinois Constitution nor the United States Constitution mandate that an arresting officer inform defendant of his right to make bond.

Even if the determining factor is whether the officer had a reasonable belief that the defendant could or would be detained beyond the booking process, the testimony was that the defendant was detained and detained lawfully.