THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOSEPH M. EVANS, Defendant-Appellee.

Second District    No. 2—99—0476

Opinion filed July 27, 2000.—Rehearing denied August 25, 2000.

Gary W. Pack, State's Attorney, of Woodstock (Martin P. Moltz and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Josette Skelnik, of Law Offices of Josette Skelnik, of Elgin, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

The State appeals the order of the circuit court of McHenry County suppressing as evidence cocaine seized from the briefcase of defendant, Joseph M. Evans. The State contends that the police officer's warrantless search of the briefcase was justified as (a) an inventory search of a detainee, (b) a search incident to arrest, and (c) a consent search. Because we believe the cocaine was seized pursuant to a valid inventory search, we reverse and remand.

On November 4, 1997, Algonquin police officers stopped the Cadillac defendant was driving and arrested him for driving on a suspended license. The officers found a stun gun and a pair of brass knuckles in defendant's car and, upon searching defendant's briefcase at the police station, recovered the cocaine. Defendant was subsequently charged with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 1996)); unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(A) (West 1996)); unlawful use of weapons by a felon (720 ILCS 5/24—1.1(a) (West 1996)); and unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 1996)).

Defendant moved to suppress the cocaine, stun gun, and brass knuckles, prompting the circuit court to hold an evidentiary hearing on the matter. The evidence from that hearing was largely undisputed and established the following facts.

Officers Jeffery Sutrick and George Harms of the Algonquin police

department were in the same squad car on the evening of November 4, 1997. They were on North Harrison Street, facing south and stopped at a light at Algonquin Road (Route 62). In front of them was a Cadillac, which was also facing south. When the traffic light on North Harrison Street turned green, the driver of the Cadillac attempted to turn right into one of Route 62's westbound lanes. However, because of traffic congestion on Route 62, the driver of the Cadillac could not complete his right-hand turn. Consequently, when it came to a halt, the Cadillac was straddling the two westbound lanes of Route 62. Believing this was a traffic violation, Officer Sutrick ran a computer check of the Cadillac's license plate. The check revealed that the license plate was valid but that the registered owner had a suspended driver's license.

The officers ultimately pulled the Cadillac over onto the shoulder of Route 62. Harms approached the Cadillac and asked defendant for his driver's license. Defendant complied, and Harms ran the license number through the dispatcher. The check confirmed that defendant was the owner of the Cadillac and that his license was suspended. Harms therefore asked defendant to exit the car, placed him under arrest, and handcuffed him. After his pat-down search of defendant's person uncovered nothing, Harms placed defendant in the backseat of the squad car. Defendant was still handcuffed. Meanwhile, a squad car driven by Officer Steve Carmada arrived on the scene.

Sutrick asked defendant if he needed anything from the Cadillac. Defendant said that he had a check in his briefcase and asked if he could get it. Sutrick replied "no" and told defendant that he (Sutrick) would get the check out of the briefcase. Sutrick therefore entered the passenger door of the Cadillac and looked through the briefcase, which he described as an accordian-style briefcase with no closure on top. Sutrick was unable to find the check in the briefcase. He then returned to the squad car and informed defendant that he could not find the check. According to Sutrick, defendant responded, "[F]ine, leave it there, and I will just go ahead and sue you for it later." Sutrick replied that the officers would bring the briefcase to the station and that defendant could get the check at the station. Sutrick retrieved the briefcase and placed it in the front seat of the squad car.

Sutrick testified that, because the Cadillac would have to be towed, he returned to the vehicle to conduct an inventory search. He entered the vehicle on the passenger side, and Carmada entered on the driver's side. During the search, Carmada found a stun gun under the driver's seat and brass knuckles in the center console. Sutrick testified that the Cadillac was towed pursuant to standard departmental procedure, for the safety of the driving public, and for the protection of the Cadillac.

Sutrick and Harms then transported defendant to the Algonquin police station for processing. Sutrick spoke with the McHenry County State's Attorney's office and received permission to file a felony charge of unlawful use of weapons against defendant. Because of the felony charge, the officers knew that defendant would be transferred to the McHenry County jail. Sutrick therefore decided to conduct a second search of the briefcase "to make sure no illegal contraband was in the briefcase prior to [defendant's] transfer to County Jail." Defendant did not consent to this search. Sutrick nevertheless searched the briefcase in defendant's presence and without a search warrant. Inside the briefcase Sutrick found cocaine.

Following the evidentiary hearing, the circuit court specifically found as follows: the stop and arrest of defendant were proper, the officers had the authority to have the Cadillac towed, and the officers conducted a valid inventory search of the Cadillac. The circuit court therefore refused to suppress the stun gun and brass knuckles. At that time, however, the court took under advisement the issue of whether the search of the briefcase was legitimate.

On March 26, 1999, the circuit court issued its ruling on that issue. The court determined that (a) defendant did not consent to the search of his briefcase; (b) the search of the briefcase did not qualify as a valid inventory search because the briefcase was at the police station and in the control of the police officers when it was searched the second time; and (c) the search did not qualify as a search incident to arrest because the officers had complete control over the briefcase after the arrest and were not in fear of their safety when they arrested defendant or when they searched the briefcase at the police station. The court therefore barred the introduction of the cocaine into evidence.

The State moved the circuit court to reconsider its decision to suppress the cocaine. Attached to the State's motion to reconsider was the Algonquin police department's official policy on "motor vehicle inventories." After allowing the introduction of the inventory policy, the circuit court denied the State's motion to reconsider. The court issued a written order on April 23, 1999, reiterating its previous factual findings and legal conclusions. The State filed a notice of interlocutory appeal and a certificate of impairment on April 23, 1999. See 145 Ill. 2d R. 604(a)(1).

On appeal, the State contends that the circuit court erred in granting defendant's motion to suppress the cocaine. According to the State, Sutrick searched the briefcase pursuant to one or more of the following exceptions to the warrant requirement: as a valid inventory search, as a valid search incident to arrest, and as a valid consent search.

On a motion to suppress, the defendant bears the burden of establishing the unlawfulness of the search and seizure. *People v. Dillon*, 102 Ill. 2d 522, 526 (1984); *People v. Mannozzi*, 260 Ill. App. 3d 199, 202 (1994). Generally, a circuit court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous. *People v. Dilworth*, 169 Ill. 2d 195, 201 (1996). However, where neither the facts nor the credibility of the witnesses is questioned, the issue becomes a question of law and is subject to a *de novo* review. *Dilworth*, 169 Ill. 2d at 201. Here, defendant neither disputes the officers' testimony nor challenges their credibility. We therefore will review the granting of defendant's motion to suppress *de novo*.

■ The fourth amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." U.S. Const., amend. IV. Subject to certain exceptions, warrantless searches are generally unreasonable and unconstitutional. *People v. Bailey*, 159 Ill. 2d 498, 503 (1994). One exception to the warrant requirement is the inventory search, which is "an incidental administrative step following arrest and preceding incarceration." *Illinois v. Lafayette*, 462 U.S. 640, 644, 77 L. Ed. 2d 65, 69-70, 103 S. Ct. 2605, 2608 (1983).

■ As stated in *Lafayette*, "At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person *who is to be jailed*. *** Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." (Emphasis added.) *Lafayette*, 462 U.S. at 646, 77 L. Ed. 2d at 71, 103 S. Ct. 2609-10. Predetention inventory searches serve four legitimate governmental objectives: (1) protecting the owner's property while it is in police custody; (2) protecting the police from false claims regarding property taken from an arrestee at the station house; (3) protecting the police, the arrestee, and other detainees from being injured by dangerous objects or substances; and (4) allowing the police to ascertain or verify the identity of the arrestee. *Lafayette*, 462 U.S. at 646, 77 L. Ed. 2d at 71, 103 S. Ct. 2609-10. Inventory searches must be made "in accordance with established inventory procedures." *Lafayette*, 462 U.S. at 648, 77 L. Ed. 2d at 73, 103 S. Ct. at 2611. While written policies on inventory searches are preferred, there is no requirement that such policies be in writing. 3 W. LaFave, Search & Seizure § 7.4(a), at 548-50 (3d ed. 1996); *United States v. Kordosky*, 921 F.2d 722, 724 (7th Cir. 1991).

In order to be justified in conducting an inventory search of a detainee, the officer performing the search must reasonably believe that the person in custody must be held for further proceedings. *Dil-*

*lon*, 102 Ill. 2d at 526; *Mannozzi*, 260 Ill. App. 3d at 209. "Simply put, the significant inquiry is whether there is a reasonable belief that the defendant will be subject to further incarceration." *People v. Nogel*, 137 Ill. App. 3d 392, 399 (1985).

In *Mannozzi*, the defendant was arrested for driving under the influence of alcohol. The arresting officer removed the defendant's purse from inside the car and brought the purse to the police station. There, without the defendant's consent, a matron inventoried the contents of the purse and found cocaine. We determined that the search constituted a valid inventory search, since the record showed that the arresting officer reasonably believed that the defendant would have to be held for further proceedings. We also noted that the matron searched the defendant's purse in accordance with a written departmental policy. *Mannozzi*, 260 Ill. App. 3d at 209.

In *Nogel*, the defendant was arrested for fighting with his girlfriend inside his car. Following the arrest, the defendant told the arresting officer that inside the car was a briefcase containing money. The officer therefore retrieved the briefcase, which was locked, and brought it with him to the station. Although defendant could have posted the $50 bond, he was placed in a jail cell because he refused to surrender his briefcase combination. The arresting officer somehow opened the briefcase, discovered a loaded .38-caliber revolver and charged the defendant with two weapons offenses. The appellate court determined that the arresting officer could not have reasonably believed that the fighting charge warranted further incarceration, since the defendant easily could have posted bond for that charge and since the defendant was jailed not for fighting but for refusing to turn over his briefcase combination. The search of the briefcase therefore was not justified as an inventory search. *Nogel*, 137 Ill. App. 3d at 398-99.

In the present case, defendant was arrested for driving on a suspended license. Due to the nature of this offense, Officers Sutrick and Harms could not have allowed defendant to drive his Cadillac from the scene. Since the officers knew the Cadillac would be towed, and since the towing would occur pursuant to standard departmental procedure, they had the authority to conduct an inventory search of the vehicle. See *South Dakota v. Opperman*, 428 U.S. 364, 375-76, 49 L. Ed. 2d 1000, 1009, 96 S. Ct. 3092, 3100 (1976); *People v. Braasch*, 122 Ill. App. 3d 747, 751-53 (1984). It was during the search of the Cadillac that Officer Carmada found the stun gun and brass knuckles for which defendant was charged with unlawful use of weapons by a felon, a Class 3 felony. See 720 ILCS 5/24—1.1 (West 1996). Sutrick and Harms each testified that defendant was going to be transferred to

McHenry County jail based on the felony charge. The officers also testified that the reason defendant's briefcase was searched was that defendant was going to be transferred to jail. The officers' belief that defendant would be temporarily incarcerated on the felony charge was perfectly reasonable. See *People v. Seymour*, 84 Ill. 2d 24 (1981) (police had right to detain person arrested on unlawful use of weapons charge).

Furthermore, despite the fact that it was his burden to prove that the search of his briefcase was unreasonable (see *Dillon*, 102 Ill. 2d at 526; *Mannozzi*, 260 Ill. App. 3d at 202), defendant adduced no evidence showing that the Algonquin police lacked a standardized policy of searching detainees and inventorying the items found on them. To the contrary, the testimony of Sutrick and Harms suggested that such searches were routine. Furthermore, the department's policy on "motor vehicle inventories" states, "All items of value shall be itemized on this agency's property inventory form and such materials turned over to the control of the property room for safekeeping." While the written policy might not cover predetention inventory searches, the quoted language suggests that the department had in place a standardized procedure for searching detainees and inventorying their property.

Because Sutrick reasonably believed that defendant was to be further incarcerated, and because defendant failed to prove that the Algonquin police department lacked a standardized policy of conducting predetention inventory searches, we conclude that Sutrick's search of defendant's briefcase was a valid inventory search. See *Mannozzi*, 260 Ill. App. 3d at 209.

Pointing out that Sutrick already had looked through the briefcase when it was in the car, defendant contends that the second search of the briefcase was unnecessary. Defendant also maintains that Sutrick's motive for searching the briefcase was investigatory in nature, thus rendering the search illegal. Specifically, defendant emphasizes Sutrick's statement that he searched the briefcase "to make sure no illegal contraband was in the briefcase prior to [defendant's] transfer to County Jail." We reject these arguments. Although Sutrick could have inventoried the contents of the briefcase when he first looked through it (see *Opperman*, 428 U.S. at 375-76, 49 L. Ed. 2d at 1009, 96 S. Ct. at 3100), he did not. Instead, similar to the situations in *Nogel* and *Mannozzi*, Sutrick, believing the briefcase contained a check belonging to defendant, brought the briefcase to the station to benefit defendant and to secure its contents. It was only after he learned that defendant was going to be transferred to McHenry County jail that Sutrick searched the briefcase for the purpose of inventorying its contents. Contrary to defendant's assertion, a full reading of Sutrick's

testimony indicates that he searched the briefcase not for investigatory purposes but rather because defendant was going to be transferred to McHenry County jail. Indeed, Harms' testimony suggests the same. Learning of the impending transfer gave Sutrick the authority to search the briefcase separate and apart from his authority to search the briefcase while it was inside the Cadillac. Compare *Mannozzi*, 260 Ill. App. 3d at 207-09 (where, at time of arrest, officer could have searched purse found inside car, he still had authority to conduct pre-detention inventory search of purse), with *People v. Reincke*, 84 Ill. App. 3d 222 (1980) (where officers conducted an inventory search of defendant's car and returned two hours later to search the car again, the second search could not be justified as an inventory search).

Next, defendant contends that Sutrick violated department policy by searching the briefcase twice—once at the scene and again at the station. Defendant emphasizes the portion of the motor vehicle inventory policy that states, "An inventory should be conducted in the location at which the vehicle is seized unless limited by reasons of safety or practicality." However, defendant overlooks the portion of the policy stating that "[t]he owner or operator of the vehicle shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment." This latter provision applied to the removal of the briefcase, in which defendant told Sutrick there was a check. Although defendant was not the one who removed the briefcase from the Cadillac, he already had been handcuffed and was sitting in the back of the squad car; thus, it was only reasonable for Sutrick to have retrieved the briefcase instead of defendant. Sutrick therefore did not violate departmental policy by securing the briefcase, placing it in the squad car, and bringing it back to the station. Furthermore, as we already have determined, Sutrick had the authority to search the briefcase at the police station despite the fact that he already had made a cursory search of the briefcase in the car.

Defendant also stresses the portion of the policy stating that "[e]xamination of the contents of a motor vehicle pursuant to a criminal investigation or with the intent of discovering evidence of a crime is a search, not an administrative inventory." However, we fail to see how this provision applies to the instant case, and defendant fails to explain exactly how it applies. We therefore reject defendant's reliance on this portion of the policy.

Because the search of defendant's briefcase qualified as a valid inventory search of a detainee, the circuit court should have denied defendant's motion to suppress the cocaine seized during that search. We therefore hold that the circuit court erred in suppressing the cocaine, and we remand this cause for further proceedings consistent with this disposition.

Due to the nature of our decision, we need not decide whether Sutrick searched the briefcase incident to a lawful arrest or whether defendant consented to the search of the briefcase.

For the foregoing reasons, we reverse the order of the circuit court of McHenry County suppressing the cocaine found in defendant's briefcase and remand this cause to the circuit court.

Reversed and remanded.

McLAREN and GEIGER, JJ., concur.