THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PAULA L. THOMAS, a/k/a Paula L. Williams, Defendant-Appellee.

Fifth District    No. 5—00—0780

Opinion filed December 5, 2001.

480

Kevin Kakac, State's Attorney, of Fairfield (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

The State appeals from the trial court's grant of a motion to suppress evidence filed by Paula L. Thomas (defendant). The parties disagree about the issue facing this court, due to their disagreement about the standard of review. Therefore, the issues, as we discern them, are whether the standard of review is *de novo*, as the State suggests, since the substantive issue is one exclusively of law, or whether, as defendant suggests, we must affirm the trial court unless its decision was manifestly erroneous. The substantive question presented by this appeal is whether the trial court properly granted defendant's motion to suppress. We reverse and remand.

## I. FACTS

The parties basically agree on the facts that were presented to the judge in the hearing on the motion to suppress. On December 15, 1999, Jeff Taylor, a police officer for the Fairfield police department, stopped the car defendant was driving. Taylor testified that he stopped the car because the registration sticker was outdated. Defendant exited her car to speak with Taylor. Taylor asked defendant to show him her driver's license and proof of automobile insurance. Defendant did not have a driver's license in her possession, and her insurance card was expired. Defendant gave Taylor her name and date of birth, and when Taylor ran a computer check of this information, he discovered that no driver's license had been issued to anyone under that name.

Taylor again asked defendant her name, and she told him a different name, explaining that her name was changed due to marriage. When Taylor ran a computer check on the second name, he found that the driver's license issued under that name was expired. Taylor issued defendant four traffic citations: (1) driving with an expired license, (2) operating an uninsured vehicle, (3) no valid vehicle registration, and (4) no front license plate. Taylor arrested defendant and told her that bond would be $100.

Defendant's car was parked in a two-hour parking zone. Defendant asked Taylor not to have her car towed because she did not want to pay a towing fee. Defendant told Taylor that she would post bond as soon as she made a telephone call. Taylor retrieved defendant's purse from the inside of her car, locked her car, and placed defendant's purse on the front seat of his squad car. Taylor transported defendant, in the backseat of the squad car, to the Wayne County jail in Fairfield, Illinois.

Taylor testified that he considered unreliable defendant's statement that she would be able to make bond. Taylor explained that those arrested often make such statements when they are not able to

post bond. Nevertheless, whether defendant could post bond made no difference in the jail's decision to search her, because the policy at the Wayne County jail is to search everyone booked for a crime, including their purses, regardless of whether bond can be posted. The booking procedure also involves a jail officer filling out informational forms, photographing and fingerprinting the arrested person, issuing a jail uniform, and assigning the arrested person to a jail cell.

During the booking procedure, the officer instructs the arrestee to empty his or her pockets, inspects the contents of items such as purses and briefcases for contraband and weapons, and inventories all of these possessions. The booking area is a locked room separated from the rest of the jail. Arrestees who make bond quickly enough are not placed in a cell but are released from the booking area. However, jail policy dictates that everyone who is booked must be searched, for safety reasons. A sign posted in the booking area informs the arrestees that all prisoners are to be searched. The Wayne County jail policy follows the Illinois county jail standards (20 Ill. Adm. Code § 701.40 (2000)).

When Taylor brought defendant into the jail, Taylor carried defendant's purse and gave it to the booking officer, Cynthia Zola. Zola testified that she asked defendant a few questions before beginning the booking procedure, as she always does. Zola testified that after she asked defendant a few questions, she noticed something sticking out of defendant's purse. According to Zola, about five minutes passed between defendant's arrival and the time she noticed the object in defendant's purse. Zola described the object as a clear, plastic bag containing coffee filters with a white residue. The filters were tan in color and appeared to have been used for something. Zola testified that she knew from prior experience with drug cases that coffee filters are often used to store methamphetamine. Zola handed the purse to two other officers who were nearby in the booking room. Those officers removed the filters from defendant's purse.

Another jail officer, James Howell, testified that not long after Zola began the booking procedure with defendant, he left the booking room to speak with a woman in the reception area of the jail. The woman was Pamela Scott Tullis, who was at the jail to bail out defendant. Tullis is a friend of defendant. Tullis testified that she saw a policeman stop defendant's car, that she watched the arrest from a gas station across the street from where defendant and the police officer were parked, and that she then followed the police car to the jail. Tullis testified that she had $100 and some loose change in her possession when she arrived at the jail. Tullis testified that she talked to Officer Howell for 5 to 10 minutes after she arrived at the jail. Howell testi-

fied that he could not remember whether the other officers found the coffee filters in defendant's purse before or after he talked to Tullis.

After Howell talked to Tullis, he returned to the booking room to ask defendant how much money she had in her possession, because Tullis did not want to post the entire $100 bond.

After the coffee filters were discovered and the field test indicated the presence of methamphetamine, defendant's bond status was changed from $100 to no bond and her car was impounded and searched. In defendant's car, the police found amphetamines and a syringe. On December 16, 1999, a criminal information was filed against defendant for unlawful possession of contraband in a penal institution (720 ILCS 5/31A—1.1(a) (West 1998)), chemical breakdown of an illicit substance (720 ILCS 570/401.5 (West 1998)), unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)), and unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 1998)).

On August 28, 2000, defendant filed a motion to suppress evidence, alleging that the search of her purse and the subsequent search of her car were unconstitutional under the fourth amendment to the United States Constitution (U.S. Const., amend. IV) because she was able to post bond before the searches were conducted and, as a result, the officers conducting the searches had no reasonable belief that defendant was about to be jailed.

On November 20, 2000, after the hearing on the motion to suppress, the trial court entered an order granting the motion. The trial court's findings of fact are no different from the facts we have set forth from the hearing, except that the trial court also found, "[It is] more probable than not that the coffee filters were caused to protrude from the Defendant's purse by the arresting officer's activities when he took possession of the purse." The trial court's conclusions of law are, in pertinent part, as follows:

"1. The Fourth Amendment to the United States Constitution prohibits a station house search of the purse of a person who is charged with a petty offense when there is no reasonable expectation that it will be necessary to incarcerate that person.

2. The plain view exception to the requirement of a search warrant does not apply to the seizure of coffee filters protruding from the Defendant's purse when the arresting officer: took possession of the purse at the scene of the arrest and placed the purse in his squad car (without observing any coffee filters protruding from the purse) ***.

A search of Defendant's purse and the area of Defendant's car which was under her immediate control for the protection of the

arresting officer as an incident to Defendant's arrest might have been justified at the time of her arrest. However, based upon the foregoing facts[,] it is the opinion of this court that, notwithstanding the standard booking policy at the Wayne County, Illinois[,] [j]ail, the search of Defendant's purse and the removal and seizure of it[s] contents *** constituted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution."

After the trial court's order was entered, the State filed a timely notice of appeal and a certificate of substantial impairment. Under Supreme Court Rule 604(a) (188 Ill. 2d R. 604(a)), we have jurisdiction over this appeal because it is from an order suppressing evidence. See *People v. Young*, 82 Ill. 2d 234 (1980).

## II. ANALYSIS

### A. Standard of Review

■ Ordinarily, a reviewing court will not disturb the trial court's ruling on a motion to suppress evidence unless the ruling is manifestly erroneous. *People v. Ingram*, 316 Ill. App. 3d 319, 323 (2000). However, when the issue is purely a question of law and the trial court's findings regarding the credibility of the witnesses are not at issue, the standard of review is *de novo. Ingram*, 316 Ill. App. 3d at 323. In the case at bar, the substantive issue involves only a question of the trial court's interpretation of the law. The trial court ruled as a matter of law that the United States Constitution prohibits a jailhouse search of the purse of an arrested person "when there is no reasonable expectation that it will be necessary to incarcerate that person." Hence, our review in this case is *de novo.*

### B. Constitutionality of Search of Defendant's Purse

■ The State first argues that it was both lawful and constitutional for Officer Taylor to arrest defendant for the minor traffic violations for which she was initially ticketed. The State is correct. A custodial arrest for a traffic offense is proper. *Gustafson v. Florida*, 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973) (the search incident to the defendant's arrest was proper where the defendant failed to produce a valid driver's license); *United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) (an arrest and search were upheld for driving on a revoked license); *People v. Bailey*, 159 Ill. 2d 498 (1994) (an arrest and search were valid where the driver was stopped for having no front license plate and was arrested for having no valid driver's license).

In the recent United States Supreme Court case of *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 149 L. Ed. 2d 549, 577, 121 S. Ct.

1536, 1557 (2001), the Court held, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." In *Atwater*, the Court found constitutional the arrest of a woman for the failure to wear her seat belt and the failure to secure her children in seat belts. The Court also found constitutional the subsequent acts of the police, which the Court described as follows:

"She was handcuffed, placed in a squad car, and taken to the local police station, where officers asked her to remove her shoes, jewelry, and glasses[ ] and to empty her pockets. They then took her photograph and placed her in a cell, alone, for about an hour, after which she was taken before a magistrate[ ] and released on $310 bond. The arrest and booking were inconvenient and embarrassing to Atwater, but not so extraordinary as to violate the Fourth Amendment." *Atwater*, 532 U.S. at 354-55, 149 L. Ed. 2d at 577, 121 S. Ct. at 1558.

■ The State contends that since the arrest and search of the woman in *Atwater* were constitutional, then the arrest and search of defendant in this case were also constitutional. In support of this argument, the State relies upon Illinois Supreme Court case law that found constitutional the arrest and search of a person for a minor traffic offense. In *Bailey*, our supreme court found as follows:

"A search incident to a lawful arrest is a traditional exception to the warrant requirement of the fourth amendment. Indeed, such a search is considered reasonable under the fourth amendment. [Citation.] It is reasonable for police to search the arrestee for weapons that the arrestee could use to resist arrest or escape, or for evidence that the arrestee could conceal or destroy. The search is restricted to the person of the arrestee and any area into which the arrestee can reach. *Chimel v. California* (1969), 395 U.S. 752, 762-63, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040." *Bailey*, 159 Ill. 2d at 503.

In *Bailey*, the court upheld an automobile search as incident to the person's arrest, where the officers' view of an open can of beer in the car gave them probable cause to arrest the defendants and to search the vehicle. The court determined that the search was "not limited substantively to liquor[ ] but rather was limited spatially to the interior of the automobile, including any containers found therein." *Bailey*, 159 Ill. 2d at 507.

■ The State contends further that once the driver is lawfully arrested for not having a valid license, then the officer may make a custodial arrest and use evidence found as a result of that arrest. In support of that contention, the State cites *People v. Perry*, 204 Ill. App.

3d 782 (1990). In *Perry*, the defendant was arrested for the failure to produce a valid driver's license. The court determined that because the defendant failed to produce a valid driver's license, her custodial arrest at the scene was both proper and legal. *Perry*, 204 Ill. App. 3d at 787. The court also concluded that the later search of the defendant's purse was proper as incident to her arrest, even though the search was not conducted at the scene of the arrest but was conducted at the police station "shortly after" the arrest. *Perry*, 204 Ill. App. 3d at 789. We follow the court in *Perry* in its holding that the search of an arrested defendant's purse at the police station is a proper search if incident to a valid arrest. *Perry*, 204 Ill. App. 3d at 789.

The rationale supporting this ruling is a simple application of common sense: if, at the scene of an arrest, the officers may properly search the person of the defendant and the possessions and containers immediately accessible to the defendant from the inside of the vehicle, then there is no change in the constitutionality of the search merely because it is conducted somewhat later at the jail. There are numerous reasons why an arresting officer might want or need to delay the search of items such as purses until a later arrival at the jail. If the officer is alone at the time of the arrest, he should not be distracted by trying to search through a defendant's purse prior to transporting the defendant to the jail. The conditions for conducting a search could be ripe for error or taint at the scene but are more controlled at the jail, where the items found can be inventoried if necessary or properly cataloged as evidence if contraband or illegal weapons are found. Regardless of the reason for delaying the search, the relevant consideration is that if the search would have been constitutional at the scene, it remains constitutional when it is later conducted at the jail.

The United States Supreme Court considered this question settled in 1974, when it stated, "It is *** plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *United States v. Edwards*, 415 U.S. 800, 803, 39 L. Ed. 2d 771, 775, 94 S. Ct. 1234, 1237 (1974). The Court noted the rules as follows: "[B]oth the person and the property in [an arrestee's] immediate possession may be searched at the station house after the arrest has occurred at another place[,] and if evidence of crime is discovered, it may be seized and admitted in evidence. Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial." *Edwards*, 415 U.S. at 803-04, 39 L. Ed. 2d at 775-76, 94 S. Ct. at 1237.

In the case at bar, however, defendant suggests that the rule allowing searches incident to an arrest may not be constitutionally conducted later at the jail unless there is a reasonable expectation that the defendant will be incarcerated. Defendant urges us to affirm the trial court's grant of the motion to suppress on the basis that defendant was able to post bond for her traffic citations almost immediately and therefore the police had no reasonable expectation that she would be incarcerated and, by extension, the police could not constitutionally search her purse. Defendant cites numerous cases in which the search for possessions at the jail is coupled with the defendant's simultaneous or almost immediate incarceration. See, *e.g.*, *Illinois v. Lafayette*, 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605 (1983); *People v. Dillon*, 102 Ill. 2d 522 (1984).

In *Lafayette*, the Court held that the jailhouse search of the defendant's shoulder bag after his arrest for disturbing the peace was a valid inventory search. *Lafayette*, 462 U.S. at 646, 77 L. Ed. 2d at 71, 103 S. Ct. at 2609 ("At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the [arrested] person or in the possession of an arrested person who is to be jailed"). The Court explained the reasons supporting an inventory search as the protection of the arrestee's property from possible theft by law enforcement personnel, the protection of jail personnel from false claims of theft, and the safety of the arrestee, other inmates, and jail personnel. *Lafayette*, 462 U.S. at 646, 77 L. Ed. 2d at 71, 103 S. Ct. at 2609.

Defendant in the case at bar argues that *Lafayette* held that the inventory search of the defendant's shoulder bag was valid *only* because the defendant was about to be jailed when the search was conducted. We disagree. The Court in *Lafayette* analyzed the search as an inventory search, and the defendant was jailed shortly after the search, but the constitutionality of the search was not dependent upon the imminent detention of the defendant. The Illinois Supreme Court, in *Dillon*, recognized that there are situations in which a particular search can be viewed either as an inventory search or as a search incident to an arrest. *Dillon*, 102 Ill. 2d at 525, citing *Edwards*, 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234. In *Dillon*, the court stated that it preferred to analyze the search as an inventory search rather than as a search incident to an arrest. *Dillon*, 102 Ill. 2d at 525. Similarly, although defendant attempts to characterize this search as an inventory search, it seems more suitable to the facts to characterize it as a search incident to an arrest.

■ Defendant's references to the law pertaining to inventory searches, including the language in those cases referring to the imminent custodial detention of the arrested person, confuse the issue.

The law pertaining to inventory searches does not negate the law pertaining to searches incident to an arrest, even when those searches are conducted at a time and place separate from the scene of the arrest. The basic rule of reasonableness continues to apply, no matter what term is used to describe the search. In *Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, the Court set forth the rationale supporting all searches incident to an arrest. The following passage applies to the case at bar, even though the search of defendant's purse was conducted at the jail rather than at the scene of arrest:

> "A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment[ ] but is also a 'reasonable' search under that Amendment." *Robinson*, 414 U.S. at 235, 38 L. Ed. 2d at 440-41, 94 S. Ct. at 477.

■ In the case at bar, the arresting officer clearly had the authority to arrest defendant, and as a part of that arrest, he had the authority to seize her purse, which was within her reach in the car she was driving. The law is just as definite that the officer had no duty to search her purse at the scene of the arrest but could wait to conduct the search at a more appropriate time at the jail. Moreover, the fact that an officer other than the arresting officer conducted the search does not make the search unconstitutional. *People v. McKinney*, 274 Ill. App. 3d 880, 889 (1995) (a search incident to an arrest may be conducted at the police station by an officer other than the arresting officer).

Defendant does not dispute the fact that the booking officer noticed the coffee filters in defendant's purse prior to beginning an official inventory of defendant's possessions. Additionally, although the trial court focused strongly on the arresting officer's actions in possibly dislodging the coffee filters from the purse while he had possession of it, that fact is irrelevant to the constitutional analysis of this

issue. If the officers were authorized to open the bag and search the contents, then the fact that the arresting officer's actions might have made it easier for the booking officer to observe the contents of the purse is irrelevant to any issue presented by defendant's motion to suppress.

We hold that the lawful, custodial arrest of defendant in the case *sub judice* provided the arresting officer with the necessary authority to search defendant and her belongings, including her purse. The fact that the search was conducted somewhat later at the jail rather than immediately upon the arrest is irrelevant to the constitutionality of the search. The true issue is whether the search was reasonable within the parameters of the fourth amendment. We hold that the search of defendant's purse and the later search of her car were constitutionally reasonable, and as a result, the trial court erred as a matter of law in granting defendant's motion to suppress. We reverse the trial court's order granting the motion to suppress, and we remand this cause for further proceedings in accordance with this opinion.

Reversed; cause remanded.

GOLDENHERSH and WELCH, JJ., concur.