# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Woods*, 2013 IL App (4th) 120372

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNATHAN NORMEL WOODS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0372 |
| Filed | August 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly denied defendant's motion to suppress the cocaine discovered in defendant's pocket following a "consensual encounter" when an officer questioned defendant and his companion, who were sitting in a parked car in a public housing project, since the officer could verify defendant's right to be on the project's grounds, he did nothing to convey to defendant that he had been seized, and even though the officer had grounds for a *Terry* patdown, he asked for and received defendant's consent to pat him down before he found the cocaine. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 11-CF-403; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Kelly M. Weston, all of State Appellate Defender's Office, of Springfield, for appellant.

Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Appleton and Turner concurred in the judgment and opinion.

## OPINION

¶ 1    In May 2011, the State charged defendant, Johnathan Normel Woods, with unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2010)). Shortly thereafter, defendant filed a motion to suppress, arguing that the police violated his fourth-amendment right to be free from unreasonable searches and seizures. Following a July 2011 hearing, the trial court denied defendant's motion to suppress.

¶ 2    In November 2011, following a stipulated bench trial, the trial court convicted defendant of unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2010)). In February 2012, the court sentenced defendant to five years in prison.

¶ 3    Defendant appeals, arguing that the trial court erred by denying his motion to suppress. We disagree and affirm.

¶ 4                              I. BACKGROUND

¶ 5    In May 2011, the State charged defendant with unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2010)). Shortly thereafter, defendant filed a motion to suppress, arguing that the police violated his fourth-amendment right to be free from unreasonable searches and seizures. In July 2011, the trial court conducted a hearing on defendant's motion, at which the parties presented the following evidence.

¶ 6                    A. The Evidence Presented at the July 2011 Hearing
                              on Defendant's Motion To Suppress

¶ 7    In May 2011, defendant and his girlfriend, Qyanna Jackson, were sitting in a parked vehicle in front of Jackson's apartment, which was in the Sunnyside Housing Complex. (The

Sunnyside Housing Complex is part of the Bloomington Housing Authority.) Officer Elias Mendiola, who was on routine patrol, stopped his squad car in an adjacent parking spot and approached the vehicle. Mendiola found defendant sitting in the driver's seat and Jackson sitting in the passenger seat of the vehicle. Mendiola began questioning the couple from the driver's window to make sure they were allowed to be on the housing complex grounds. (A second officer arrived shortly thereafter to speak specifically with Jackson from the passenger window.)

¶ 8        Mendiola asked to see defendant's identification to verify that he was permitted to be in the housing complex. Defendant responded that he did not have identification and told Mendiola that his name was "John Jones." Jackson provided her housing identification, verifying that she lived at the Sunnyside Housing Complex. Jackson explained to Mendiola that defendant was her guest.

¶ 9        Mendiola testified that he submitted the names provided by the couple to dispatch. Dispatch responded that those names came back "clear." Although skeptical of the name defendant provided, Mendiola did not pursue it further because defendant appeared nervous. While he was speaking to defendant, Mendiola told defendant to keep his hands visible and then "called him out on why he was nervous." Defendant responded, "no reason," but Mendiola was concerned because of the neighborhood's history of violence. At one point, defendant made a "quick movement with his right hand towards his right front pocket." Mendiola said that he reiterated that he wanted defendant to keep his hands visible and that if he made a quick movement like that again, he would "produce a weapon" because he would "assume [he was] going for a weapon." Mendiola then asked defendant for consent to pat him down. Defendant consented and exited the vehicle so that Mendiola could do so.

¶ 10      Mendiola escorted defendant to the rear of Jackson's vehicle, where he initiated the pat down. When Mendiola "got to the waistband area," defendant started looking down and appeared nervous again; defendant was "trembling." Mendiola then asked defendant for consent to search his right front pocket, and defendant consented. That search revealed two rocks of cocaine inside some cellophane. Mendiola thereafter arrested defendant. After being read his rights at the police station, defendant confirmed that he consented to the pat-down search.

¶ 11      Although the general account of the events outlined by Mendiola was consistent with that of defendant and Jackson, their testimony differed from Mendiola's account in some significant ways. According to them, defendant never reached for his pocket while he was in the vehicle–indeed, he was "playing on his phone" and "lit a cigarette." Both defendant and Jackson also (1) insisted that defendant was not nervous and (2) testified that Mendiola threatened to shoot defendant if he did not stop moving. Defendant testified that he never consented to being searched because Mendiola never asked for consent; instead, Mendiola asked him to exit the vehicle and move to the rear of the vehicle where Mendiola patted him down. Jackson testified that the officers told her that she "could get out of the car" and told her to sit "over by [her] residence."

¶ 12                     B. The Trial Court's Findings Following the
                           Hearing on Defendant's Motion To Suppress

¶ 13        On this evidence, the trial court denied defendant's motion to suppress, finding as
follows:

> "Well, the Court would first note that it finds Officer Mendiola to be a credible
> witness and believes his version of events. The question i[n] considering his testimony
> [is] whether he acted within the law. This is a different situation than had he just
> encountered the defendant on the street somewhere. This is a public housing situation
> where the officers have a legal right to check with people who are on the property ***
> to determine whether they have a right to be there since it can be a violation in and of
> itself just to be present on the property [i]f you do not have a proper ID or are not the
> guest of someone who does. So clearly the officer in approaching the car initially to
> check on the folks who were in the car is appropriate and proper.

> The sequence of events after that, this is an experienced police officer, he's in
> uniform, he is in, even though it's the morning time, he is in a known high crime area
> where there are many problems with shootings, gangs, drugs *** and he has worked for
> many, many years, and his testimony is that the responses he got initially from the
> defendant were very suspicious. Now, we don't really get to prove up that they were
> accurate observations by the fact that they turned out to be true later on. However,
> whether they turned out to be true or not is not really the issue.

> The issue is what was he confronted with at that point? Did he have some reason
> based on the behavior of the defendant, the manner in which he gave his name and so
> forth, and the manner in which he was acting to continue the interview for a period of
> time, and also to make the request for a pat-down search[?] The defendant was not only
> acting nervous, but he was also making further movements with his hand that cause the
> officer to have a problem.

> I don't agree with [defense counsel's] analysis that once the officer learned that
> [Jackson] lived there, and there was no real testimony from the officer that he was shown
> an ID or had a valid proof of that other than that she said something to that affect, but
> still he mentioned, as is the case, that there's checking to be done to see if a person is on
> the banned list. If the person is banned from the housing area, it doesn't make any
> difference if they were a guest, then they would be subject to being arrested for trespass,
> or at least being asked to leave the premises. He had not had time to do that, so he was
> making a further check.

> He would have been justified at that point to make a pat-down of the defendant for
> weapons without consent, but he asked for and received consent while he was still
> appropriately investigating the issue, and the defendant voluntarily stepped out of the car,
> was patted down, and during the course of the pat-down he received permission to check
> inside the pocket. Ordinarily, if the pat-down itself did not produce something that might
> possibly be a weapon, there might be an issue here. But he received further permission
> to check in the pocket and discovered the cocaine here.

> The later issues with the false name and clearing that up are really kind of irrelevant

-4-

other than the fact that the defendant's initial nervousness, which was to such an extent that the officer had concerns enough to continue his investigation and want a pat-down. Civil libertarians would say harassment. Many a police officer is no longer with us by ignoring the kind of signs that this officer got that day and didn't take adequate precautions and learned too late that a person may have been armed or dangerous to an extent that it was not immediately apparent. The Court will deny the motion to suppress for the reasons stated."

¶ 14                          C. Defendant's November 2011 Stipulated
                                 Bench Trial and Subsequent Sentence

¶ 15    Following a November 2011 stipulated bench trial, the trial court convicted defendant of unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2010)). In February 2012, the court sentenced defendant to five years in prison.

¶ 16                                      II. ANALYSIS

¶ 17    Defendant appeals, arguing that the trial court erred by denying his motion to suppress. Specifically, defendant contends that Mendiola violated his fourth amendment right to be free from unreasonable searches and seizures when Mendiola exceeded the scope of the initial stop. Alternatively, defendant asserts that even if Mendiola did not exceed the scope of the initial stop, defendant's consent to search was involuntary. We disagree on both points, turning first to the fourth amendment and our standard of review.

¶ 18               A. The Fourth Amendment and the Standard of Review

¶ 19    The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; accord Ill. Const. 1970, art. I, § 6. Accordingly, the guarantees of the fourth amendment attach where a "search" or "seizure" takes place. " 'A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.' " *People v. Bartelt*, 241 Ill. 2d 217, 226 (2011) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). However, a "seizure" occurs when " 'the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " *Bartelt*, 241 Ill. 2d at 226 (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)).

¶ 20    When reviewing a trial court's ruling on a motion to suppress evidence, a reviewing court utilizes a two-part test, under which the court's factual findings may be rejected only if they are against the manifest weight of the evidence. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). However, when reviewing those established facts in relation to the issues presented, a reviewing court may draw its own conclusions in deciding what relief, if any, should be granted. *Id.* Accordingly, a reviewing court reviews *de novo* the court's ultimate ruling as to whether suppression is warranted. *Id.*

¶ 21                    B. Defendant's Claim That Mendiola
                          Unconstitutionally Seized Him

¶ 22        Defendant contends that Mendiola violated his fourth amendment right to be free from
unreasonable searches and seizures by exceeding the scope of the initial stop. We disagree.

¶ 23        Initially, we note that defendant's characterization of his interaction with Mendiola as a
"stop" is inaccurate insofar as that characterization implies that defendant was seized when
Mendiola approached defendant. (The State inexplicably accepts the defendant's
characterization of the encounter as a "stop" in its brief, describing the encounter as a "stop
[that] was not impermissibly prolonged.") Contrary to the parties' characterization, no stop
occurred in this case. When Mendiola parked his vehicle next to defendant and Jackson,
walked up to Jackson's vehicle (where defendant was in the driver's seat), and began asking
defendant questions, Mendiola and defendant were engaged in a classic "consensual
encounter."

¶ 24        It is "well settled" that not every encounter between police and private citizens results in
a seizure. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Police-citizen encounters are
divided into the following three "tiers": (1) arrests, which must be supported by probable
cause; (2) brief investigative detentions, or "*Terry* stops," which must be supported by
reasonable, articulable suspicion of criminal activity (*Terry v. Ohio*, 392 U.S. 1 (1968)); and
(3) encounters that involve no coercion or detention and thus do not implicate fourth-
amendment interests. *Luedemann*, 222 Ill. 2d at 544-48 (adding that the so-called
"community caretaking" doctrine is analytically distinct from consensual encounters because
it is invoked to validate a search or seizure only *after* the determination of whether a search
or seizure had taken place).

¶ 25        Having outlined the three tiers of police-citizen encounters, we turn to the encounter
between defendant and Mendiola in this case.

¶ 26        In this context, an individual is "seized" for purposes of the fourth amendment when an
officer "by means of physical force or show of authority, has in some way restrained the
liberty of a citizen." (Internal quotation marks omitted.) *Luedemann*, 222 Ill. 2d at 550. The
appropriate inquiry here is whether a reasonable, *innocent* person would feel free to decline
the officer's requests or otherwise terminate the encounter. *Id.* (explaining that this is the
appropriate test for a person seated in a parked car who is approached by a police officer).
Citing Professor Wayne LaFave (4 Wayne R. LaFave, Search and Seizure § 9.4(a), at 419-21
(4th ed. 2004)), the supreme court explained why a consensual encounter is not a seizure, as
follows:

> "[T]he police may approach and question a person seated in a parked vehicle without that
> encounter being labeled a seizure. As Professor LaFave has noted, 'if an officer merely
> walks up to a person standing or sitting in a public place (or, indeed, who is seated in a
> vehicle located in a public place) and puts a question to him, this alone does not
> constitute a seizure.' 4 W. LaFave, Search & Seizure § 9.4(a), at 419-21 (4th ed. 2004).
> The 'seated in a vehicle' clause of the above passage is supported by a lengthy list of
> citations to the many state and federal decisions that have recognized this rule. See 4 W.

LaFave, Search & Seizure § 9.4(a), at 419-20, 420 n.49 (collecting cases). In *Murray*, this court held that the mere approaching and questioning of a person seated in a parked vehicle does not constitute a seizure and listed many decisions from other jurisdictions that had reached the same conclusion. [*People v.*] *Murray*, 137 Ill. 2d [382], 391-93 [(1990)]. Thus, any analysis of such a situation must begin with the recognition that the police may approach a person seated in a parked vehicle and ask questions of that person without that encounter being labeled a seizure. The encounter becomes a seizure only if the officer, through physical force or a show of authority, restrains the liberty of the vehicle's occupant. See *Bostick*, 501 U.S. at 434 ***." *Luedemann*, 222 Ill. 2d at 552-53.

¶ 27 The encounter in this case was a textbook consensual encounter. Mendiola parked adjacent to Jackson's vehicle without illuminating the lights on his squad car and approached defendant only to inquire as to whether defendant was permitted to be on the grounds of the housing complex. In so doing, Mendiola demonstrated no physical force or show of authority that would have in any way made a reasonable, innocent person feel like he was not free to decline the officer's request or otherwise terminate the encounter. Accordingly, we conclude that the encounter between defendant and Mendiola was a consensual encounter; thus, the fourth amendment simply does not apply. See *People v. Green*, 301 Ill. App. 3d 767, 771 (1998) (concluding that because nothing about the encounter between the defendant and the police was coercive or somehow involved the use of physical force or a show of authority, the fourth amendment did not apply).

¶ 28 Moreover, assuming *arguendo* that the encounter progressed to a "tier two" encounter when Mendiola indicated to defendant that if he made another "quick" movement, he would "produce a weapon" (see *United States v. Mendenhall*, 446 U.S. 544, 559 (1980) (indicating that the use of language or tone of voice indicating compliance with the officer's request might be compelled is one of many factors to be considered when determining whether a seizure has occurred)), the version of events as found by the trial court demonstrates that by that time, any potential seizure of defendant was supported by the requisite reasonable, articulable suspicion of criminal activity. During their conversation, defendant (1) provided a false name, (2) was in a high-crime area, (3) appeared to Mendiola to be very nervous, and (4) made a "quick" movement toward his pocket that Mendiola considered potentially threatening. Under the totality of the circumstances, we conclude that any potential seizure subsequent to the consensual encounter was constitutional as a brief investigatory detention, or "*Terry* stop."

¶ 29 C. Defendant's Alternative Claim That His
Consent To Search Was Involuntary

¶ 30 Alternatively, defendant contends that even if Mendiola did not exceed the scope of the initial encounter, his consent to search was involuntary. Specifically, defendant asserts that his consent to be searched was involuntary because Mendiola's behavior "conveyed the message that compliance with any subsequent request was required." We disagree.

¶ 31 Contrary to defendant's contentions, Mendiola's actions in this case did not convey to defendant that he had no choice but to allow him to search. Indeed, the evidence presented

at the hearing on the motion to suppress demonstrated the contrary. Although, as previously explained, Mendiola had the requisite reasonable, articulable suspicion to conduct a *Terry* pat-down, Mendiola nonetheless asked defendant, while defendant was still sitting in Jackson's vehicle, for consent to pat him down. Defendant voluntarily exited the vehicle and agreed to the pat-down, during which Mendiola asked defendant for consent to reach inside of defendant's right front pocket. Defendant again consented. Mendiola never drew his weapon, threatened defendant, or used any other technique that would indicate to a reasonable person that compliance with his requests was mandatory. Defendant's claim that he was somehow forced to consent because of Mendiola's actions–which were standard policing techniques–is entirely unpersuasive.

¶ 32                              III. CONCLUSION

¶ 33    Because we reject defendant's contentions that (1) Mendiola violated his fourth amendment right to be free from unreasonable searches and seizures when Mendiola exceeded the scope of the initial encounter and (2) his consent to be searched was involuntary, we conclude that the trial court properly denied defendant's motion to suppress.

¶ 34    For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its $50 statutory assessment as costs of this appeal.

¶ 35    Affirmed.