2021 IL App (1st) 180698-U

No. 1-18-0698

Order filed June 29, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 04 CR 5850 |
| | ) | 04 CR 5849 |
| | ) | |
| JOHN MALINOWSKI, | ) | The Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

ORDER

¶ 1     Defendant John Malinowski appeals from the second-stage dismissal of his petition, filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). He argues he established a substantial violation of his constitutional rights because his appellate counsel failed to argue a suppression motion on direct appeal. We affirm.

¶ 2                              BACKGROUND

¶ 3     Following a jury trial in 04 CR 5850, defendant was found guilty of aggravated kidnapping, predatory criminal sexual assault, and child pornography for the 2004 kidnapping and rape of 10-year-old A.K. when defendant was age 42. Defendant was then sentenced to a total of 120 years' imprisonment. On direct appeal, defendant raised a number of claims, including that his trial counsel was constitutionally ineffective, but this court affirmed the trial court's judgment. *People v. Malinowski*, 1-06-3517 (Dec. 19, 2008).

¶ 4     In a separate bench trial in 04 CR 5859, defendant was found guilty of the predatory criminal sexual assault of 8-year-old G.S. around 2002 and 2003, also when defendant was in his 40s. He was found guilty of child pornography, as well, and then sentenced to life in prison. This court granted counsel's motion to withdraw, finding no issues of merit on appeal, and therefore affirmed the trial court's judgment. See *People v. Malinowski*, No. 1-07-0833 (February 13, 2009) (unpublished order under Rule 23).

¶ 5     Defendant's initial *pro se* postconviction petition advanced to second-stage proceedings, wherein he was appointed counsel, and he subsequently filed the present amended petition, arguing that his appellate counsel in both cases was constitutionally ineffective for failing to revive on direct appeal his pretrial motion to suppress certain photographs and letters, found in his gym bag. The photos depicted defendant and G.S. naked and engaged in various sex acts, including oral and vaginal sex. Defendant had shown these photos to A.K. after raping her, and they were used as other crimes evidence in A.K.'s trial and also presented in G.S.'s trial.

¶ 6     Because it is relevant to the postconviction petition, we briefly describe defendant's pretrial motion-to-suppress hearing, where defendant testified on his own behalf, and the State called several witnesses, including two police officers. Evidence showed that defendant was staying for several days in the vacant apartment of an acquaintance who was also the building's

owner, but defendant had been asked to leave by the building supervisor at the owner's request. Instead, he remained and then abducted and sexually assaulted A.K. there. Police were notified within an hour of the rape and soon thereafter entered the apartment with the building supervisor's aid and guns drawn only to find defendant (who had no key to the unit) hiding in the closet right next to his green gym bag, which A.K. had described to police and which contained the aforementioned evidence. Police grabbed the bag and felt it for weapons as they arrested defendant, who also matched A.K.'s description. The arresting officer did not personally search the bag. Rather, the bag remained in the apartment unit, given that it was part of a crime scene, and it was searched and collected several hours later by police. The trial court found this was a valid search incident to arrest, noting "[t]he bag was certainly close enough to Mr. Malinowski that it was a seizure contemporaneous a[s] incident to arrest." This was notwithstanding that the bag was searched *after* the arrest.

¶ 7    Following evidence and argument, the postconviction court concluded that reviving this motion to suppress on direct appeal would have been fruitless and therefore appellate counsel was not ineffective. Defendant's postconviction petition was found to be untimely and meritless, and dismissed at the second stage on the State's motion. Defendant appealed.

¶ 8                                     ANALYSIS

¶ 9    The Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1(a) (West 2018); *People v. Davis*, 2014 IL 115595, ¶ 13. The Act sets forth three stages of review for a petition. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first, without any input from the State, the circuit court may dismiss petitions that are "frivolous or * * * patently without merit," and if not then dismissed, the petition advances to the

second stage, where the defendant with the option of counsel must make a substantial showing that his constitutional rights were violated in order to be entitled to a third-stage evidentiary hearing. *Id.* ¶ 34; 725 ILCS 5/122-2.1(a)(2), (b) (West 2018). When reviewing a motion to dismiss at the second stage, we accept as true all factual allegations that are not positively rebutted by the record. *People v. Lander*, 215 Ill. 2d 577, 586 (2005). We review the dismissal of a postconviction petition without an evidentiary hearing *de novo*. *Id.*

¶ 10     Defendant maintains he established a substantial constitutional violation that his appellate counsel was ineffective. The State first responds that we cannot reach the merits of this claim because defendant's petition is untimely by three years, and he has not alleged "facts showing that the delay was not due to his *** culpable negligence." 725 ILCS 5/122-1 (West 2018). Defendant does not dispute the petition was untimely[1] but challenges the State's latter point as to culpable negligence. Defendant notes he filed a separate postconviction motion under section 2-1401 of the Civil Code of Procedure (735 ILCS 5/2-1401 (West 2010)) in December 2010 and then appealed its dismissal, albeit without success. See *People v. Malinowski*, 2012 IL App (1st) 110868-U. Afterwards, he filed the present petition, *pro se*, in October 2012. He maintains these pursuits show his diligence, and his intellectual limitations (having a full scale IQ of 65, in the "Extremely Low" range) excuse his delay.

¶ 11     While defendant is correct that the "culpably negligent" standard under the Act contemplates something greater than ordinary negligence, and is more akin to recklessness, it is

---

[1]A postconviction petition must be filed within six months of the date for filing a petition for certiorari or a petition for leave to appeal. *People v. Johnson*, 2017 IL 120310, ¶ 24. Here, the six-month time period for filing a postconviction petition started to run after the expiration of the 35 days in which defendant had to file a petition for leave to appeal to this court in both *People v. Malinowski*, 1-06-3517 (Dec. 19, 2008) and *People v. Malinowski*, No. 1-07-0833 (February 13, 2009). As such, his postconviction was due July 24, 2009, and September 17, 2009, for the respective cases. Defendant, however, did not file his petition for another three years until October 2012.

also true that the sole obligation of knowing the time requirements for filing a postconviction petition remains with the defendant. *Lander*, 215 Ill. 2d at 588-89; *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). Defendant's filing of the section 2-1401 petition, rather than demonstrating his due diligence, betrays his recklessness in failing to ascertain the proper dates for filing his postconviction petition. See *People v. Johnson*, 2017 IL 120310, ¶ 27 (noting, the defendant's "lack of legal knowledge as to postconviction matters was insufficient, since ignorance of the law or of one's legal rights does not provide an excuse for his late filing.").

¶ 12    Defendant likewise has failed to demonstrate that his low-grade intelligence precluded a timely filing. While the record shows defendant's IQ was consistent with mild mental retardation, it also shows that he was found fit to stand trial in 2005 and capable of living independently as an adult managing life affairs. Given other factors, like his general awareness of surroundings and short-term memory skills, an evaluating psychologist ultimately ruled out mild mental retardation. This perhaps explains why defendant's trial counsel, who also filed a motion to suppress defendant's statements to police, deleted the original claim that defendant's statements were involuntary due to his low IQ. Plus, we have reviewed the transcript from defendant's motion-to-suppress hearing, wherein he testified. Defendant was able to track the proceedings and adequately answer questions presented to him. In addition, an investigative report from the adult probation department shows defendant had been married and had a son from a previous five-year relationship; he graduated high school with average grades, although he did have learning disorders; and, he completed some months of truck driving school and then completed a four-year private security training program.

¶ 13    Thus, the record, plus defendant's filing of the section 2-1401 petition, demonstrates he was more than capable of filing a timely postconviction petition, and any claim that he lacked

culpable negligence necessarily must fail. We also agree with the State that the complicated nature of his claim does not excuse untimeliness, where defendant is only required to assert the gist of a constitutional claim at the first stage of postconviction proceedings. *People v. Hodges*, 234 Ill.2d 1, 9 (2009). In other words, defendant exhibited a blameable neglect insofar as he disregarded the consequences likely to result from his actions as to the late filing. See *Boclair*, 202 Ill. 2d at 106.

¶ 14 Defendant argues in the alternative that his postconviction counsel provided unreasonable assistance by failing to amend his petition to address the untimeliness issue. See *People v. Perkins*, 229 Ill. 2d 34, 42 (2007) (noting, a postconviction petitioner is only entitled to a reasonable level of assistance). In particular, he argues postconviction counsel failed to include available facts as to his mental condition.

¶ 15 Defendant's argument consists only of several sentences without record citations and is thus forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (the argument must contain the contentions of the appellant and the reasons therefor with citation to authorities and pages of the record relied on, and points not argued are forfeited and shall not be raised in the reply brief); *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 15 (noting, the appellate court is "not simply a repository in which appellants may dump the burden of argument and research.")

¶ 16 Forfeiture aside, defendant's argument fails under our *de novo* review of his postconviction attorney's compliance with Supreme Court Rule 651(c) (eff. July 1, 2017). *People v. Jones,* 2011 IL App (1st) 092529, ¶ 19. Here, postconviction counsel filed a Rule 651(c) certificate, as required, verifying that she had consulted with defendant by mail and phone to ascertain his contentions of deprivation of constitutional rights; investigated his claims; examined the trial records; and filed an amended postconviction petition so as to adequately

present defendant's claims. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. This Rule 651(c) certificate created a rebuttable presumption that postconviction counsel provided reasonable assistance, and defendant has not fulfilled his burden of overcoming the presumption. See *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 17     The extended record, rather than contradicting postconviction counsel's Rule 651(c) certificate, amply supports it. In hearings before the court, counsel represented that she had reviewed defendant's "very voluminous" record, repeatedly consulted with defendant, and examined exhibits and evidence sent by defendant "the thickness of two phone books," in addition to hiring an investigator to contact witnesses. In response to the State's motion to dismiss for untimeliness, counsel attempted to overcome the time bar by alleging facts to establish a lack of culpable negligence in the late filing by asserting defendant had been diligent in pursuing his case (which is, incidentally, the same argument defendant now makes on appeal) and included defendant's affidavit stating the same. Although unsuccessful, the argument was not unreasonable. See *Perkins*, 229 Ill. 2d at 51 (noting, while postconviction counsel's arguments were not compelling or merit-worthy, those factors did not demonstrate some other excuse existed for the delay in filing). While defendant maintains his mental deficiencies excused his untimeliness, the record contradicts that this was a successful argument. *Cf. People v. Robinson*, 324 Ill. App. 3d 553, 556-57 (2001) (concluding that postconviction counsel should have informed the court that the defendant's mental condition may have caused his untimeliness where the record was "riddled with information concerning [his] severe mental disabilities."). Counsel is not required to advance nonmeritorious claims on defendant's behalf. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Accordingly, we agree with the State that postconviction counsel was reasonable, and defendant's petition was untimely.

¶ 18    However, untimeliness aside, defendant's petition still fails on the merits. Defendant argues his appellate counsel was constitutionally ineffective for failing to argue his pretrial motion to suppress on direct appeal. A defendant who contends that appellate counsel rendered ineffective assistance must show that the failure to raise the issue was objectively unreasonable and that the decision prejudiced the defendant. *People v. West*, 187 Ill. 2d 418, 435 (1999). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in counsel's judgment, are without merit, unless this appraisal is patently wrong. *Id*. Thus, unless the underlying issue is meritorious, defendant cannot establish prejudice. *Id*.

¶ 19    As to the underlying issue, defendant maintains that no exception to the warrant requirement applied to justify the warrantless search of his gym bag several hours after his arrest. He argues admission of the explicit photos was prejudicial and, had his appellate counsel raised the fourth amendment argument on direct appeal, there is a reasonable probability he would have received a new trial in both cases.

¶ 20    The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV; *Collins v. Virginia*, —U.S.—, 138 S. Ct. 1663, 1669 (2018). A search conducted without a warrant issued by a neutral magistrate who has found probable cause is *per se* unreasonable under the fourth amendment, unless it falls within one of the few well-defined exceptions to the warrant requirement, such as a search incident to arrest. *People v. Cregan*, 2014 IL 113600, ¶ 25; *People v. Pitman*, 211 Ill. 2d 502, 513 (2004); *People v. Woodrome*, 2013 IL App (4th) 130142, ¶ 19. The defendant bears the burden of proof on a motion to suppress evidence. *Cregan*, 2014 IL 113600, ¶ 23. If the defendant makes a *prima*

*facie* showing that the evidence was obtained in an illegal search or seizure, the burden shifts to the State to provide evidence to counter the defendant's case. *Id*. Nonetheless, the ultimate burden remains with the defendant. *Id*. We review *de novo* the trial court's ultimate ruling as to whether suppression is warranted. *People v. Woods*, 2013 IL App (4th) 120372, ¶ 20.

¶ 21    For several reasons in this case, defendant was unable to fulfill his burden of demonstrating an unreasonable search and seizure of his gym bag, an "effect" under the fourth amendment. See *Oliver v. United States*, 466 U.S. 170, 177 n.7 (1984) (noting, the term "effects" is less inclusive than "property" and is limited to personal, rather than real, property). First, notwithstanding the State's concession that defendant had a protectable privacy interest in the gym bag, we disagree. The fourth amendment "protects people, not places" (or by extension, things). *Katz v. U.S.*, 389 U.S. 347, 361 (1967) (J. Harlan, concurring); *People v. Lindsey*, see also 2020 IL 124289, ¶ 33 (reaffirming *Katz*). A two-fold rule has emerged where a person must have exhibited an actual, subjective expectation of privacy, and that expectation must be one that society is prepared to recognize as reasonable. *Id*.

¶ 22    Here, the record shows that defendant had no privacy interest in the apartment, a fact he does not dispute, and he was clearly trespassing when he was arrested; the police, by contrast, were lawfully present. See 720 ILCS 5/21-3 (West 2018)). Even if defendant believed he had a reasonable expectation of privacy in his gym bag, given that he was illegally trespassing in the unit where a sexual assault had just reportedly occurred, we do not believe society would recognize his expectation of privacy in the gym bag as reasonable. See *id*.; see also *United States v. Ross*, 456 U.S. 798, 102 (1982) (noting, an individual's expectation of privacy may yield where there's probable cause of a crime); *People v. Bookout*, 241 Ill. App. 3d 72, 77 (1993)

(noting that one who is wrongfully on the premises cannot invoke the privacy of the premises searched).

¶ 23    Second, aside from privacy concerns, we agree with the trial court that the search of the bag was valid as incident to defendant's arrest. Defendant was found in his closet with the duffel bag next to him. We also have reviewed the photographs of the closet, revealing its size, and duffel bag submitted into evidence at trial. The photos and the suppression testimony demonstrate the bag was clearly within defendant's reaching distance and thus within the area of his immediate control. See *Cregan*, 2014 IL 113600, ¶ 25 (noting, "[a] search incident to arrest falls under two lines of analysis: search of the person of the arrestee and search of the area under the control of the arrestee."); see also *Arizona v. Gant*, 556 U.S. 332, 335, 339, 346 (2009) (noting that an arrestee's "immediate control" is "the area from within which he might gain possession of a weapon or destructible evidence."). The officers' actions were consonant with the purpose behind the rule, evidence preservation and officer safety since officers knew by inference that the duffel bag could have contained evidence related to the crime and they also suspected a possible weapon inside. See *Gant*, 556 U.S. at 339, 344. The offense-related evidence thus also supported the search. See *id*. at 344. And, although officers seized the duffel and conducted a cursory search at the outset for weapons, that did not preclude officers from conducting a more in-depth search to secure the photos and other evidence several hours later. See *People v. Thomas*, 326 Ill. App. 3d 479, 486 (2001), quoting *United States v. Edwards*, 415 U.S. 800, 803 (1974).  ("It is *** plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention.").

¶ 24    While the State relies exclusively on *Cregan* to counter defendant's contentions, *Cregan* involved a search of the person of the arrestee. See *Cregan*, 2014 IL 113600, ¶¶ 50, 51 (noting that the "true measure of whether an object *** is 'immediately associated' with an arrestee is whether he is in actual physical possession of the object at the time of his arrest," meaning touching the item). Here, the record does not answer whether defendant was actually touching his duffel bag at the time of arrest, such that we could say the *Cregan* exception conclusively applies. This is likely because *Cregan* was decided long after the motion-to-suppress hearing in this case. Nonetheless, as set forth, this case clearly involved a search of the area under the control of defendant and was valid.

¶ 25    Based on the foregoing, at the pretrial hearing, the State established that the warrantless search of defendant was a valid search incident to arrest, and defendant failed to counter that evidence. Given that conclusion, we cannot fault appellate counsel for declining to argue defendant's suppression motion on appeal, as it is a meritless claim. Accordingly, defendant has failed to establish a substantial constitutional violation, as required under the Act.

¶ 26                                    CONCLUSION

¶ 27     Based on the foregoing, we affirm the judgment of the circuit court dismissing defendant's postconviction petition at the second stage of proceedings.

¶ 28    Affirmed.